LAMPERT v. HAYDEL, *Trustee, Appellant.*

Will, Construction of: RESTRAINT OF POWER OF ALIENATION. A testator devised lands to a trustee for the use of his three sons, "with power in my three sons to use and enjoy, equally, the rents, issues and profits thereof during their natural lives," his object being "to secure to my children a certain annual income beyond the accident of fortune and bad management on their part, and, with this end in view, to take away from them the power of disposing of the same, or of creating any liens thereon, or of making the same liable in any way for their debts." *Held* that it was the evident purpose of the testator to restrain the anticipation or alienation by the sons of the income of the realty, and that such restriction was a valid one.

| 96 | 439 |
| --- | --- |
| 96 | 456 |
| 96 | 466 |
| 96 | 439 |
| 118 | 659 |
| 96 | 439 |
| 122 | 348 |
| 96 | 439 |
| 73a | 455 |
| 73a | 458 |

*Transferred from St. Louis Court of Appeals.*

AFFIRMED.

*J. K. Hansbrough* and *E. B. Adams* for appellant.

(1) Under the will, Junius Jacobs could not dispose of his interest in the rents and profits, in advance of their being paid over to him by the trustee ; and his assignment of the same is void. *Dougal v. Fryer*, 3 Mo. 40 ; *Clamorgan v. Lane*, 9 Mo. 447 ; *Langdon v. Ingram*, 28 Ind. 360 ; *Stewart v. Bradley*, 3 Bush, 623 ; *Stewart v. Barrow*, 7 Bush, 368 ; 1 Wash. Real Prop. [4 Ed.] *54 ; 2 Minor's Inst. 252 ; *Laval v. Staffel*, 64 Tex. 370 ; *Bank v. Davis*, 21 Pick. 42 ; *Montague v. Crane*, 12 Mo. App. 582 ; *Nichols v. Eaton*, 91 U. S. 716 ; *Hyde v. Woods*, 94 U. S. 523 ; *Spindle v. Shreve*, 9 Biss. 199 ; *Bank v. Adams*, 133 Mass. 170 ; *Bank v. Windham*, 133 Mass. 175 ; *Thackera v. Mintzer*, 100 Penn. 151 ; *Stieb v. Whitehead*, 111 Ill. 247 . *Pope v. Elliot*, 8 B. Monr. 56 ; *Camp v. Cleary*, 76 Va. 140 ; *Siemers v. Kleeburg*, 56 Mo. 196 ; *Barnes v. Dow*, 10

Atl. Rep. 258. (2) If the clause in the will restraining the aliening of the rents and profits is void, then the entire trust is void; the creation of the trust and restraining the alienation are an entirety, and utterly incapable of separation without doing violence to, and wholly ignoring, the testator's scheme and manifest intent. *Root v. Stuyvesant,* 18 Wend. 257. (3) Plaintiff was not, even if the owner of Junius Jacobs' interest, entitled to a judgment against defendant for any amount, until there was a net balance in his hands as trustee, after the entire certain and necessary annual expenses of the property were paid; and, in no event, was he entitled to a judgment, under the circumstances of the case, for more than the amount due at the commencement of the suit. (4) Defendant was entitled, under the facts in this case, to an allowance out of the trust funds, sufficient to cover his reasonable and necessary expenses incurred in defending this suit, and having the will construed. Whitt. Prac. 576, sec. 451; 2 Perry on Trusts [2 Ed.] secs. 891, 894, 899, 902: Hill on Trustees [Am. Notes] *552, *555, *557; 1 Redfield on Wills [Ed. of 1875] *493; *Rogers v. Ross,* 4 Johns. Ch. 608; *Bliss v. Am. Society,* 2 Allen [Mass.] 334; *Drew v. Wakefield,* 54 Me. 291; *Turner's Appeal,* 48 Mich. 369; *Dodge v. Williams,* 46 Wis. 70; *Will of John Meurer,* 44 Wis. 392.

*Hitchcock, Madill & Finkelnburg,* also, for appellant.

*Albert Arnstein* and *Henry I. D'Arcy* for respondent.

A testator cannot tie up his property, under a trust, in such a manner that his devisee may enjoy the income thereof without having the right to dispose of the same. A man cannot own property or money to live on and not own it for the purpose of paying his dtbse.

*McDowell v. Brown,* 21 Mo. 57 ; *Brandon v. Robinson,* 18 Ves. 4291 ; *Graves v. Dolphin,* 1 Sim. 66 ; *Green v. Spicer,* 1 Russ. & M. 395 ; *Snowden v. Dales,* 6 Sim. 524 ; *Rockford v. Hackman,* 9 Hare, 475 ; *Trappes v. Meredith,* L. R. 9 Eq. 229 ; *Rippon v. Norton,* 2 Beav. 63 ; Gray on Restraints of Alienation, par. 179–213 ; Story Eq. Jur. 947*a ;* 1 Perry on Trusts, sec. 380*a ; Tillinghast v. Bradford,* 5 R. I. 205 ; *Hooberry v. Harding,* 10 Lea [Tenn.] 392 ; *Heath v. Bishop,* 4 Rich. Eq. [S. C.] 46 ; *Dick v. Pitchford,* 1 Deb. & Bat. Eq. [N. C.] 480 ; *Mebane v. Mebane,* 4 Ired. Eq. [N. C.] 131 ; *Pace v. Pace,* 73 N. C. 119 ; *Bailey v. McWhorter,* 56 Ga. 183 ; *Kempton v. Hallowell,* 24 Ga. 52 ; *Rugely v. Robinson,* 10 Ala. 702 ; *Robertson v. Johnston,* 36 Ala. 197 ; *Jones v. Reese,* 65 Ala. 134 ; *Wallace v. Smith,* 2 Handy [Ohio] 79 ; *Samuel v. Salter,* 3 Met. 259 ; *Kuefler v. Shreve,* 78 Ky. 297 ; *Easterly v. Keney,* 36 Conn. 18.

*Cunningham & Eliot,* also, for respondent.

SHERWOOD, J.—The clause of the will of George R. Jacobs, deceased, brought in question by this litigation, is as follows : "I give and devise the next, or middle lot, and the store-house thereon * * * to the said John Byrne, Jr., and F. L. Haydel, of St. Louis county, in trust, and for no other purpose, for the use and benefit of my three sons, Wm. H., Charles A. and Junius, in equal shares, as long as they all may live, with power in my three sons to use and enjoy equally the rents, issues and profits thereof during their natural lives. When all three of my said sons have died, it shall be the duty of said trustees, or their successors in office, to convey this lot and the store-house thereon, in fee-simple to the descendants or heirs-at-law of William H., Charles A. and Junius, in equal proportions, per stirpes. As long as any of my three sons, just named, survive, the said trustee shall hold said property in trust for the use and

benefit of the survivor, or survivors, and the descendants or heirs-at-law of the deceased. * * * My object in making the foregoing disposition of my St. Louis property, and in attaching the limitations aforesaid, is to secure to my children a certain annual income beyond the accident of fortune and bad management on their part, and with this end in view, to take away from them the power of disposing of the same, or of creating any lien thereon, or of making the same liable in any way for their debts."

John Byrne, Jr., one of the trustees named in the will, declining to act, the defendant Haydel is the only acting trustee. He took charge of the property in 1878, collected the rents, etc. In April, 1885, Junius Jacobs executed and delivered to plaintiff a deed of assignment, purporting to convey to him all the interest in the rents and profits of the property accrued and thereafter to accrue. The defendant, having been notified of the assignment, refused to recognize it as valid. The plaintiff thereupon instituted this proceeding against him to compel an accounting, for judgment for the amount found to be due upon such accounting and for other and further relief.

The answer of the defendant denied that the plaintiff acquired any interest in the rents and profits by reason of the assignment and alleged that said assignment, under the terms of the will, was void. He further alleged that neither at the date of the assignment to plaintiff, nor since that date, did he have any money in his hands, arising from said rents and profits, due said Junius Jacobs or the plaintiff. His answer concludes with a prayer that the court would construe the aforesaid clause of the will and enter a decree for the guidance and protection of him in his capacity as trustee. The circuit court held the clause in the will restraining the alienation of the rents and profits void, the assignment valid, and as the testimony showed that the defendant had in his hands $163.96 at the hearing of

the cause, a decree was entered, allowing the trustee thirty dollars for answering, and gave judgment against him for the residue and costs. He thereupon appealed to the St. Louis court of appeals, where the judgment of the lower court was reversed ; but inasmuch as LEWIS, P. J., dissented ( basing his conclusion on the ground that the majority opinion was contrary to two decisions of this court in *McDowell v. Brown*, 21 Mo. 57, and *McIlvaine v. Smith*, 42 Mo. 45 ), the cause was transferred to this court under the provisions of section 6 of the constitutional amendment concerning the judicial department.

The prominent point in this cause, one which overshadows all the rest, is :   Were the limitations in this will void as being in restraint of alienation ?   If this question be answered in the negative it will be needless to inquire as to the correctness of the ruling in regard to stating the account between the plaintiff and the defendant, or as to the amount due the former, since the defendant has not refused to come to an accounting with his *cestui que trust*, nor show any unwillingness to respond to his obligation towards him, so that a negative answer as aforesaid, disposes of the whole case, so far as concerns the plaintiff ; and this is all that is necessary to do.   In order then to determine what answer shall be returned to the question propounded, it becomes necessary to examine the clause of the will upon which both the plaintiff and the defendant rely to support their respective contentions.

An examination of that clause, in connection with the authorities, leaves no room to doubt, that taken as a whole, it lacks nothing either of form or substance, to make the intent of the testator effective, provided that intent is such an one as a court of chancery can sanction, protect and effectuate.

That the testator intended to give his sons but a limited control over the rents, issues and profits of the realty devised to the trustees, a control beginning only

upon payment to them of such rents, etc.; that he intended those rents should be inalienable; that they should not be anticipated; that they should be unsubject to any debts or liens created by the beneficiaries, is quite too plain for argument, and this is especially true where the duty of the courts is considered, a duty emphasized by statute, to make the intent of a testator the polar star of construction. R. S. sec. 4008; *Hall v. Stephens*, 65 Mo. 670. The validity of the devise, therefore, as against creditors and assignees, is the only question at present at issue. It will be proper to ascertain, before proceeding further, whether the cases already cited from our own reports have any material bearing on the point under discussion.

That of *McIlvaine v. Smith*, 42 Mo. 45, was a case where a man attempted to place property, its rents and profits in the hands of a trustee, so that neither could be reached by his creditors; a case where "*the beneficiary himself was the donor*"; and it was held this could not be done. This was the point in judgment, and any remarks of a broader scope must be classed as *dicta*. The case of *McDowell v. Brown*, 21 Mo. 57, was one which involved the construction of a *deed* not a *will*. The granting clause was to "the grantee" and her heirs from henceforth and forever. Subsequent to this granting clause, were words indicating a desire on the part of the grantor, that the grantee, his daughter, should not alienate the estate, but that upon her death, the property should "revert to the children of my said daughter, as well living as to be born." And on these words, it was claimed that the daughter only took a life estate with remainder to the children. But it was ruled that the *fee* having passed by the granting clause, any subsequent restriction upon alienation being repugnant to the fee granted was void, and this was the only point in judgment. Anything else said in the case, was said *arguendo*, and does not carry with it the force of an

adjudication, nor does the language used even in argument, at all bear upon the point whether there could be, as to a *life estate*, a restriction upon alienation.

In quite a recent case in this court, where a *deed* came under consideration, an instrument which contained apt and sufficient words to confer a fee upon the first taker, but failed to expressly convey a life estate to her, and the rule was invoked that the remainder over was void, we refused to apply the rule, notwithstanding there was a decided repugnancy between the legal significance of the two clauses in controversy ; and we examined " the face of the entire deed in question," and from that examination we deduced the conclusion that as the *object* was to give a life estate to the daughter, with remainder over to the husband, we ought to "*make the intention of the parties effectual*," and so it was ruled. *Bean v. Kenmuir*, 86 Mo. 666. That case strongly exemplifies the growing tendency in modern adjudication, to give as much consideration to the claims of obvious justice as to the demands of an arbitrary and technical construction.

There is nothing, therefore, in the two cases heretofore mentioned, and which occasioned the transfer of this cause, to prevent the consideration of the case at bar upon correct principles, and as a case of first impression in this court. Those affirming the validity of the clause of the will, as against the claims of creditors or assignees, have cited authorities showing that the doctrine of restraint upon alienation does not apply even to a legal *life estate*, but only to estates *in fee*. And authorities have been cited of a contrary effect. The weight of authority would seem to favor the conclusion that such restraints are not invalid except when annexed to a *legal title in fee*. And there is certainly great force in the position that if a legal estate for life can be fettered by a restraint upon alienation, that a more rigid rule should not prevail in regard to *equitable life*

*estates*. But it may be conceded that restraints upon the alienation of legal life estates are invalid at law, and still it does not follow that such restraints are invalid in respect to estates in equity of a similar duration.

The reasons for this view of the matter will now be presented, and they will be confined to the question here at issue, *i. e.*, whether a restraint may be imposed upon the alienation of an *equitable* life estate, such as was created in the assignor in the present instance. Trusts of this character are the "*creatures of equity ;* " they had their origin in courts of chancery, and are alone cognizable in such courts. The growth of the system of jurisprudence pertaining to them has been slow and gradual in its development, and the methods and the nature of the relief given in respect of them consist in the application of old principles to new cases as they arise according to their exigency. 1 Perry on Trusts, secs. 7, 8, 17 ; 1 Story Eq. Jur. [13 Ed.] par. 49. Being the creatures of equity, they must be and are administered and enforced in accordance with the inherent and peculiar rules which pertain to that system of jurisprudence. Sometimes, those rules accord with and are in conformity to, the rules of law ; sometimes they vary from them partially or totally.

It has been urged that the restraint upon alienation which is allowed in trusts for the separate use of married women, is an exception which proves the rule, that such restraints are not to be allowed in other cases. But it must be remembered that this exception, as well as the doctrine upon which it is grafted, are both of comparatively modern growth. The doctrine that a married woman could have a separate estate, an estate free from the control of her husband, only dates back to the first quarter of the last century. In *Hulme v. Tenant*, 1 Bro. Ch. 16, decided in 1778, it was ruled that a limitation to the separate use did not prevent the *feme* from aliening.

But it was found that this doctrine gave very insufficient protection to married women, as they were still in danger of parting with their property under the influence or coercion of their husbands. Subsequently, Lord Thurlow, happening to be nominated as trustee of Miss Watson's settlement, directed the insertion of the words "*and not by* anticipation." But even such words are not necessary if an intention to restrain anticipation can be gathered from the whole instrument. *In re Ross' Trust*, 1 Sim. [N. R.] 199 ; *Doolan v. Blake*, 3 Irish Eq. [N. S.] 349. Then the question arose, when the settlement was made on a *feme sole*, whether a clause restraining alienation would apply as to a future and unknown husband. At first, it was ruled that it would not. *Massey v. Parker*, 2 M. & K. 174. But Lord Cottenham, who had decided the case just cited, overruled it in *Tullett v. Armstrong*, 4 Myl. & Cr. 377, 390, decided in 1840, wherein he ruled that when property was given for the separate use of a woman, it would shift with her condition, be at her disposal when single or discovert, and come anew into operation and vigor when marital relations were entered into. It is observable of that case that it overrules the principles announced in *Newotn v. Reid*, 4 Sim. 141, decided in 1830, and *Malcolm v. O'Callagan*, 5 L. J. Eq. 137, decided in 1836, and other cases, that notwithstanding a restriction against alienation, yet that such restriction was void unless there was a gift over in that event, the very same doctrine as that asserted in 1811, in *Brandon v. Robinson*, 18 Ves. 429, and upon which the plaintiff relies for success in the present instance.

Lord Cottenham was in much doubt as to the ground upon which to base his decision in *Tullett's case*, *supra;* but finally, after much consideration, he placed it upon the *broad ground that a court of chancery had an inherent power to modify estates of its own creation*, and in virtue of that jurisdiction to establish the validity of the separate use to the fullest extent, *in order to*

*effectuate the intention of the donor*, whch might be defeated but for such interposition. He said : " When once it was established that the separate estate of a married woman was to be so far enjoyed by her as a *feme sole*, as to bring with it all the incidents of property, and that she might therefore dispose of it as a *feme sole* might do, it was found that to secure to her the desired protection against the marital rights, it was necessary to qualify and fetter the gift of the separate estate by prohibiting anticipation. The power to do this was established by authority not now to be questioned, *but which could only have been founded upon the power of this court to model and qualify an interest in the property, which it had itself created, without regard to those rules which the law has established for regulating the enjoyment of property in other cases.* If any rule, therefore, were now to be adopted by which the separate estate should, in any case, be divested of the protection of the clause against anticipation, it would in such cases, defeat the object of the power so assumed. A *feme covert*, with a separate estate, not protected by a clause against anticipation, is, in most cases, in a less secure situation than if the property had been held for her simply upon trust. In the latter case, this court, with the assistance of her trustees, can effectually protect her ; in the other her sole dependence must be upon her husband not exercising that influence or control, which, if exercised, would, in all probability, procure the destruction of her separate estate. In the case of a gift of separate estate, with a clause against anticipation, the author of the gift supposes that he has effectually protected the wife against such influence or control. Upon what principle can it be that this court should subject her to it, and by so doing defeat his purpose, and completely alter the character and security of his gift ? The separate estate, and the prohibition of anticipation, are equally creatures of equity, and equally inconsistent with the ordinary rules of property. The

one is only a restriction and qualificati on of the other. The two must stand or fall together." *Tullett v. Armstrong*, 4 My. & C. 393.

That case affords a striking illustration of what Judge Story so eloq uently observes: "The beautiful character, pervading excellence, if one may so say, of equity jurisprudence, is that it varies its adjustments and proportions so as to meet the very form and pressure of each particular case in all its complex habitudes." 1 Story Eq. Jur. sec. 439. And Lord Cottenham frequently laid down the rule that it was the duty of a court of equity to "adapt its practice and course of proceeding, as far as possible, to the existing state of society, and to apply its jurisdiction to all those new cases which * * * must continually arise, and not, from too strict an adherence to forms and rules, established under very different circumstances, decline to administer justice, and to enforce rights, for which there is no other remedy." *Taylor v. Salmon*, 4 Myl. & Cr. 141 ; *Mare v. Malachy*, 1 Myl. & Cr. 559 ; *Wallworth v. Holt*, 4 Myl. & Cr. 619.

Now, if a court of equity, in order to protect *one class of trusts*, creatures of its own creation, and by so doing to effectuate the intention of the author of the gift, can exercise its own inherent power to model and qualify an interest in equitable property without regard to the rules which the law has established for regulating the enjoyment of property in other cases, it is difficult to see why, with a like object in view, *i. e., the effectuation of the gift just as its author intended it to be effectuated*, such court may not lay down and declare a rule in such a case as this, which shall be equally effectual in preventing the intention of the donor from being thwarted ; a rule which injures or defrauds no one, which violates no rule of public policy, and which gives stability and protection to a

provision which, originating in the warmest ties of affection, seeks to afford to the beneficiary, a sure and unfailing refuge against the vicissitudes of fortune.

If a court of equity, as already seen, will guard such a trust in one case with jealous solicitude, why should it fail to do so in another, in circumstances equally meritorious? No sound reason can be urged to support a negative answer to this question, unless that be deemed a good reason, which is based upon some isolated technicality. But, as a general rule, a court of equity, in administering its peculiar jurisprudence, regards substance, not form, and refuses to be hampered by the narrow confines of technical formulas. Instances almost too numerous for computation are to be found in the books, where instruments, void and valueless at law, are held valid and enforced in equity.

Under the operation of the rule announced in *Brandon v. Robinson*, 18 Ves. *supra*, while a clause against alienation is held invalid, on the ground that a donor creating a life estate, could not attach to his gift conditions forbidding its alienation, yet even by that rule, an equitable estate for life may be given, with a limitation over or a cesser to a third person, should the life-tenant attempt to alien it or become bankrupt; or a donor can place his bounty beyond the reach of creditors, by making it optional with the trustee whether he will pay the income to the beneficiary. In all these instances there is more or less restraint upon the right of alienation. The only effect of the English rule where the instrument is drawn in accordance with it and the terms of the instrument are not complied with, is that the interest becomes forfeit and so the creditors get nothing; and they get nothing also where there is a discretion as to payment lodged with the trustee. If this be so, it seems difficult to see why the founder of the trust may not do by a *direct* restraint upon alienation, what he may *indirectly* do by another method. Sound

reason would seem to maintain that such a distinction is too shadowy for a court of equity to follow, especially so, as by a direct restraint upon alienation the intention of the donor is effectuated and by the indirect method his intention is frustrated and overthrown.

But whatever may be the view taken by the English courts on this question, some courts of the highest authority in this country maintain the opposite view, holding that those considerations which apply to legal estates have no application where property is transferred in trust; as in such instances, the trustee takes the whole property with the usual incidents of alienation, and in like manner, the beneficiary takes the legal title to the income when it is paid over to him, and therefore the point about restraints upon alienation has no foundation either in law or in fact. This is the position taken by the supreme court of Massachusetts, in a cause which was twice argued (*Broadway National Bank v. Adams*, 133 Mass. 170), and the trust in that case, substantially identical with that one before us, held valid. Similar adjudications have been made in Pennsylvania, from an early period in its judicial history. *Thackara v. Mintzer*, 100 Pa. St. 151, and cas. cit., and in other states: Vermont, *Barnes v. Dow*, 10 Atl. Rep. 258 and cas. cit.; Maryland, *Smith v. Towers*, 14 Atl. Rep. 497. The two cases just cited are quite recent, the former having been decided in 1887, and the latter in June of the present year. The supreme court of the United States, in *Nichols v. Eaton*, 91 U. S. 716, has affirmed the validity of such trusts, and also in a subsequent case, *Hyde v. Woods*, 94 U. S. 523.

The opposite view is taken in several states, and the authorities in support of that view will be found in the briefs of counsel. In some states, the validity of such trusts, where the fund proceeds from the bounty of another, is sanctioned by express statutes. This is true of New York, New Jersey, Illinois and Tennessee. Decisions in those states, therefore, are of no value in

the discussion of the question where such statutory provisions are not involved.

The judgment of the St. Louis court of appeals will be affirmed and the cause remanded to that court, with directions to order the circuit court to dismiss the plaintiff's petition. With the exception of RAY, J., absent, all concur.