KESSNER et al. v. PHILLIPS et al., Appellants.

**Division One, June 15, 1905.**

1. **SPENDTHRIFT TRUST: Creation: Trustee: Execution.** A spendthrift trust is the term commonly used to designate a trust created for the maintenance of the *cestui que trust*, and to secure the fund against his improvidence. But where he is given an absolute right to the fund or its avails, such as the right to occupy the land and receive its income, or where the land is conveyed to him upon the simple condition that it shall not be subject to his debts, no spendthrift trust arises or is created, and his interest may be sold under execution. So that a deed to a grantee upon the express condition that the land shall not be liable to his debts nor sold or incumbered by him for thirty years, and if he attempts to sell or incumber it the title shall vest in the grantors, but that if at the end of thirty years. he has neither sold nor incumbered it the title shall vest absolutely in him, does not create a spendthrift trust, for five reasons: first, no trust estate is by it created; second, no trustee is appointed; third, his interest is not limited to the enjoyment of the income, nor is his right simply the right of support; fourth, an absolute estate in fee simple is vested in him; and, fifth, he is given the right of possession. Hence, the land can be sold under execution to satisfy a judgment against him.

2. ———: **Absolute Conveyance: Defeasance.** After an absolute conveyance in fee simple, a clause that the grantee shall not mortgage or dispose of the property, is repugnant and void.

3. ———: ———: **Debts: Execution.** A condition attached to an absolute fee that land conveyed directly to the grantee shall not be subject to his debts is in restraint of alienation and void. Notwithstanding such condition, the land is subject to sale under execution against the grantee for the payment of his judgment debts.

4. **EVIDENCE: Contradictory of Pleading.** Where defendant's answer alleges that the judgment under which the land in suit in

ejectment was sold to plaintiff was a final judgment, the court should exclude defendant's offer to the effect that motions for new trial and in arrest in that suit were still pending at the time of the trial in this, for that evidence would tend to contradict defendant's answer.

5. **HOMESTEAD: Sheriff's Deed Under Execution.** The statute does not require the sheriff's deed to land sold under execution to recite that he gave the defendant the opportunity to select his homestead before levy was made on the rest of his land. And where the sheriff's deed recites that commissioners were appointed and that they set apart a certain portion of defendant's land as a homestead, and the defendant in a suit in ejectment offers no evidence tending to prove that the sheriff had failed in his duty to afford defendant an opportunity to select his homestead, it will not be held that the sheriff's deed is void because it does not affirmatively show that defendant was given that opportunity.

6. **PRACTICE: Ejectment: Treated as Case in Equity.** Where the answer of defendant in ejectment set up an equitable defense but asked no affirmative equitable relief, the case remained one at law. But where appellant failed to preserve any exception to the action of the court in treating the case as one in equity, but acquiesced therein, he is not in a position on appeal to assign that action as error.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,* Judge.

AFFIRMED.

*A. N. Adams, John N. Southern* and *Scarritt, Griffith & Jones* for appellants.

(1) A valid trust may be created by parol. Bispham on Principles of Equity (4 Ed.), p. 96; Nichols v. Eaton, 91 U. S. 726; Stratton v. Edwards, 174 Mass. 378; Safford v. Rantoul, 12 Pick. 240. The intention of the grantor must be given effect if not contrary to law. Long v. Turner, 107 Mo. 519; Brown v. Gibson, 82 Mo. 529; Gibson v. Bogy, 28 Mo. 478; Hoganshen v. Welscher, 14 Mo. 183; Jecko v. Taussig, 45 Mo. 170; Bruensmann v. Carroll, 52 Mo. 313; Smith v. Bell, 6 Peters 68; Cheney v. Stephens, 97 Mass. 77; Morrison v. Wilson,

30 Cal. 346; Blake v. Stone, 27 Vt. 476; Walliss Ex. v. Walliss, 4 Mass. 135; Railroad v. Beal, 47 Cal. 151; Allen v. Holtan, 20 Pick. 463; Pike v. Monroe, 36 Me. 315; Flagg v. Eames, 40 Vt. 20; Collins v. Lavelle, 44 Vt.233. The intention of the grantors can be effectuated, and violate no principle of law. Wood v. Kice, 130 Mo. 335; Dougal v. Fryer, 3 Mo. 40; Clemorgan v. Lowe, 9 Mo. 455; Lampert v. Haydel, 20 Mo. App. 621; Lampert v. Haydel, 96 Mo. 439; Partridge v. Cavender, 96 Mo. 457; 2 Washburn on Real Property (5 Ed.), p. 9; McWilliams v. Nisley, 7 Am. Dec. 654; Langdon v. Ingram, 28 Ind. 360; Steward v. Brady, 3 Bush (Ky.) 623; Steward v. Barron, 7 Bush (Ky.) 368; Montague v. Crane, 12 Mo. App. 582. (2) The court erred in refusing appellants' offer to show that the judgement upon which execution issued was not final. Bliss on Code Pleading (3 Ed.), par. 328; Wicks v. Smith, 18 Kan. 508; Corby v. Wedle, 57 Mo. 452; Hook v. Turner, 22 Mo. 333; Fisher v. Stephens, 143 Mo. 181; Swan v. Stephens, 143 Mo. 384. (3) The sheriff's deed offered in evidence was invalid, by reason of the fact that the condition precedent to the right to set out the homestead had not been complied with. R. S. 1899, sec. 3617; Shacklett v. Scott, 23 Mo. App. 322; Blake v. Byrd, 131 Mo. 682.

*Paxton & Rose* for respondents.

(1) There was no trust declared in writing either by Robert N. Hudspeth or by J. L. Hudspeth's grantors, and now it is not permissible to add his verbal declarations to his will, much less to add his verbal declarations to a deed made by other parties. R. S. 1899, sec. 3416; Curd v. Brown, 148 Mo. 82; Green v. Cates, 73 Mo. 115; Price v. Kane, 112 Mo. 412; Perry on Trusts, sec. 76; Hillman v. Allen, 145 Mo. 638. (2) No spendthrift's trust is created by the deed to J. L. Hudspeth, because there is no provision made for a

trustee, and a spendthrift's trust is based upon the assumption that the legal title is in a trustee with active duties to perform, and cannot be reached by execution against the *cestui que trust*. Lambert v. Haydel, 96 Mo. 451; Pugh v. Hayes, 113 Mo. 424. (3) The language of the deed only applies to debts contracted, and does not cover damages for a tort. Lear v. Liggett, 2 Simons 480; Whitfield v. Pritchett, 2 Keen 608; Doe v. Carter, 8 T. R. (Durnford & East) 57; King v. Robinson, Wightwick's Rep. 386. (4) Spendthrift trusts do not cover torts or crimes. A man who commits homicide is not a spendthrift. (5) It is not permissible to deed land with a proviso in the deed that it shall not be subject to the grantee's debts. This is the law in States where spendthrift's trusts are recognized. Blackstone Bank v. Davis, 21 Pick. 42; Broadway National Bank v. Adams, 133 Mass. 170; Jones on Real Prop., sec. 663. (6) An execution issued before motions for new trial and in arrest are overruled is not void. Ex parte Craig, 130 Mo. 595; Fontaine v. Hudson, 93 Mo. 62. (7) There was no complaint in the lower court that the homestead was not set off properly, no such defense was made, no evidence was introduced on this subject, and no such point can be raised here.

MARSHALL, J.—This is an action in ejectment, instituted on the twentieth of September, 1899, to recover 70 acres of land in township 50, range 30, Jackson county, Missouri. The petition is in the usual form, and the ouster is laid as of September 20, 1899.

The action is against Phillips, the tenant in possession, and Joseph Lamertine Hudspeth, the owner.

The defendants answered jointly. The answer is a general denial, coupled with a special defense particularly set forth, the substance of which is, that the conveyance to the defendant Hudspeth of the land in controversy, created a spendthrift trust, whereby said Hudspeth was prohibited from alienating the land, and

whereby it was attempted to place the same beyond the reach of his creditors. The answer further sets up, that in 1898 the plaintiff Kessner obtained a judgment for $5,000 against the defendant Hudspeth, under which the property in controversy was sold on execution and the plaintiffs became the purchasers thereof. And it is alleged that they thereby acquired no right, title or interest in the same. The reply admits the conveyance to Hudspeth, but denies that it created such a trust; admits the judgment aforesaid and the sale thereunder, and asserts that the plaintiffs obtained a good title to the property.

Upon the motion of the plaintiffs the case was transferred to the equity docket of the court, "for the reason that defendants have filed an answer setting up an equitable defense, and the case is now triable by this court." It does not appear from the abstract of the record that the defendant objected thereto or saved any exceptions to the ruling of the court.

The trial court entered judgment for the plaintiffs for possession, one cent damages, and $20 monthly rents and profits. After proper steps the defendants appealed.

The case made is this:

Robert N. Hudspeth, the uncle of the defendant Joseph Lamertine Hudspeth, was the owner of the property. On the thirteenth of March, 1871, he executed his will, by which he devised all of his property, including that in controversy, to his brothers and sister, that is, one undivided half to his brother Joel E. Hudspeth, and the other undivided half to his brothers George W. Hudspeth, Silas B. Hudspeth, and his sister Malinda P. Bell, share and share alike. Thereafter, in March, 1885, Robert N. Hudspeth died. And afterwards, on June 15, 1885, his said brothers and his said sister made, executed and delivered to the defendant, Joseph Lamertine Hudspeth, a deed to the property in question, being a part of the property devised to them,

and which deed recited that, "in consideration of love and affection, and in pursuance to the verbal request of their brother Robert N. Hudspeth, now deceased, whose heirs and devisees they are, under and by virtue of his last will and testament . . . and upon the condition precedent as herein set out, and in consideration of the sum of one dollar to them paid by Joseph Lamertine Hudspeth, . . . they have granted, bargained, sold and transferred, and do by these presents, grant, bargain, sell and transfer unto the said Joseph Lamertine Hudspeth, upon the terms and conditions hereinafter set forth," certain property, amounting to one hundred twenty acres, and covering the seventy acres here in dispute. The deed contained the following further provisions: "This conveyance being made upon the express condition that the above described real estate shall not be liable to any debts that the said Joseph Lamertine Hudspeth may now have, or that he may contract during the period of thirty years from the date hereof. And the said Joseph Lamertine Hudspeth shall have no right, power or authority to, in any manner, sell, encumber or dispose of said real estate or any part thereof for the period of thirty years from the date hereof, except to dispose of the same by his last will and testament. After the expiration of said thirty years, as aforesaid, said real estate shall vest absolutely in the said Joseph Lamertine Hudspeth, free and clear of all the conditions herein named to use and enjoy and dispose of in any manner he may deem proper. The said Joseph Lamertine Hudspeth to have the use and enjoyment and the income therefrom from this date upon the terms and conditions above named. But should he sell, or attempt to sell or encumber, said premises at any time during the said thirty years, then, in that event the title to the above described premises shall immediately vest in the said first parties, their heirs or assigns."

The plaintiffs offered in evidence the sheriff's

deed, under the judgment aforesaid. The defendants objected to the introduction of the deed upon two grounds, first, because the deed does not show, on its face, that the law in reference to the setting apart of a homestead had been complied with; and second, that the judgment, under which execution was issued, was not a final judgment, and therefore the clerk had no right to issue the execution. The court overruled the objection and the defendants saved exception.

The sheriff's deed showed that commissioners were appointed to set out the homestead of the defendant Hudspeth, and that they did set apart to him fifty acres of the tract as a homestead, and that the remaining seventy acres were sold to the plaintiffs.

The plaintiffs also offered in evidence the amended petition in the case wherein the judgment aforesaid was rendered, which showed that the plaintiff Kessner was the wife of Joseph W. Kessner, and that the defendant Hudspeth had wilfully shot and killed him, for which she sued for $5,000 damages. The plaintiffs also showed the rental value of the land and then rested.

On their behalf the defendants offered in evidence a certified copy of the judgment aforesaid which also contained a recital of the fact that the defendant had filed motions for new trial and in arrest of judgment.

The record did not show, affirmatively, that said motions had been overruled or acted upon. The plaintiffs objected to the introduction of the said certified copy of the judgment, on the ground that the defendants' answer admitted that the judgment was a final judgment, and further because the certified copy did not purport to be a copy of the whole record or proceedings in the case. The court sustained the objection, and excluded the record on the ground that the defendants' answer pleaded the judgment as a final judgment, and the plaintiffs' reply admitted the same. The defendants excepted to the ruling of the court.

The defendants then offered in evidence the will

of Robert N. Hudspeth, which, so far as is material here, devised the property in controversy to the brothers and sister of the testator, absolutely, as stated. The defendants then called Edward P. Gates, one of the attesting witnesses to the will, and over the objection of the plaintiffs, the court permitted him to testify that at the time the testator executed the will, he apprehended some difficulty, which might result in his sudden death. But the witness testified that no such occurrence took place, and that the testator lived a number of years afterwards. The defendants also called Mrs. Malinda Wood, nee Bell, the sister of the testator, and one of the grantors in the deed to the defendant Hudspeth, and over the objection of the plaintiffs, the court permitted her to testify that she and her brothers executed the deed to the defendant Hudspeth in conformity to the verbal direction of the testator that they should convey the property to the defendant Hudspeth and should fix it so that it could not be taken for his debts for a period of thirty years and so that he could not alienate it. She further testified that the defendant Hudspeth paid nothing for the land. This was all of the testimony in the case. As before stated, the trial court entered a judgment for the plaintiffs, and after proper steps the defendants appealed.

I.

The crucial question in this case is, what interest defendant Hudspeth had in the land in controversy.

The defendants contend that Robert N. Hudspeth, by verbal directions to his brothers and sister, created a spendthrift trust for the defendant Hudspeth, and that said brothers and sister effectuated the trust by the execution of the deed to him, and that the proper construction of that deed is, that the land could neither be alienated by the defendant Hudspeth, or taken *in invitum* by his creditors until the expiration of the period of thirty years limited in the deed, and hence,

that the sale of the land, under execution to the plaintiffs, was void and conveyed no title.

On the other hand, the plaintiffs contend, that an express trust in land can only be created, under the statutes of this State, in writing, and that the deed of the defendant Hudspeth is, in no sense, the creation of a spendthrift trust, and only limits the sequestration of the land for debts contracted by Hudspeth, and does not prevent the land from being sold to satisfy a judgment based upon a tort of said Hudspeth.

In view of the conclusion herein reached it is not necessary to follow the able and ingenious argument of counsel in reference to the creation of an express trust by the verbal direction of the donor and the subsequent written declaration of the trustee or grantee.

The doctrine of spendthrift trust is recognized in this State. [McIlvaine v. Smith, 42 Mo. 55; Partridge v. Cavender, 96 Mo. 457; Lampert v. Haydel, 96 Mo. 439; Pugh v. Hayes, 113 Mo. 424.]

But whether a conveyance created a spendthrift trust is always the question, primarily, for consideration.

A spendthrift trust is the term commonly used to designate a trust created for the maintenance of the *cestui que trust,* and to secure the fund against the improvidence of the *cestui que trust.* The English rule, which has been adopted in most of the States of this Union is, that it is against the policy of the law for the grant to be so limited that a donee shall have the possession and enjoyment of the property, but shall not have the power of alienation, or that the property shall not be liable for his debts. Under the English law it is competent to make the estate determinable, as upon the bankruptcy of the donee, in which event, the estate is to revert to the donor, or to some person specified in the grant. In such case the creditor is deprived of the estate, by the act which deprives the donee thereof. But where no such provision for the determination of the

estate is contained in the grant, the property will pass to the assignee in bankruptcy.

The American doctrine differs from the English rule, and is thus stated in 26 Am. and Eng. Ency. Law (2 Ed.), 139: "This doctrine is, that it is lawful for a testator or grantor to create a trust estate for the life of the *cestui que trust,* with the provision that the latter shall receive and enjoy the avails at times and in amounts either fixed in the instrument or left to the discretion of the trustee, and that such avails shall not be subject to alienation by the beneficiary nor liable for his debts."

The most learned discussion of the subject, and of the difference between the English and the American doctrine is that of Mr. Justice MILLER in Nichols v. Eaton (91 U. S. 716). The Am. and Eng. Ency., aforesaid, at page 140 et seq., has collected the arguments, pro and con, bearing upon the two doctrines, but it is not necessary to the determination of this case to pursue the inquiry further.

In order to create a spendthrift trust certain prerequisites must be observed, to-wit: first, the gift to the donee must be only of the income. He must take no estate whatever, have nothing to alienate, have no right to possession, have no beneficial interest in the land, but only a qualified right to support, and an equitable interest only in the income; second, the legal title must be vested in a trustee; third, the trust must be an active one, not a mere dry trust which may be executed under the statute of uses. [26 Am. and Eng. Ency. Law (2 Ed.), 142 et seq; McIlvaine v. Smith, 42 Mo. 55; Partridge v. Cavender, 96 Mo. 457; Lampert v. Haydel, 96 Mo. 439; Kingman v. Winchell, 20 S. W. 296; Ehrisman v. Sener, 162 Pa. St. 577; Keyser's Appeal, 57 Pa. St. 236; Rife v. Geyer, 59 Pa. St. 393; Upham v. Varney, 15 N. H. 462; Lear v. Leggett, 2 Simons 479; Bank v Adams, 133 Mass. 170; Bank v. Davis, 38 Mass. 42].

"On the other hand, where the *cestui que trust* has

an absolute right to the fund or its avails, such as a right to occupy the land and to receive the income therefrom, . . . or where it is his absolute property and may therefore be alienated by him,'' or where the land is conveyed upon a simple conditon that it shall not be subject to the grantee's debts, no spendthrift trust arises, or is created, and the donee's interest may be sold under execution, or sequestrated in equity. [26 Am. and Eng. Ency. Law (2 Ed.), 144; 1 Jones on Real Property, sec. 663; Gray's Restraints on Alienation, sec. 259; Potter v. Merrill, 143 Mass. 190; Maynard v. Cleaves, 149 Mass. 307; Smeltzer v. Goslee, 172 Pa. St. 298; Young v. Easley, 94 Va. 193].

The deed to the defendant Hudspeth, here involved, falls radically short of the requirements of the rule as to the creation of spendthrift trusts, and especially so in the following particulars: first, no trust estate is created; second, no trustee is appointed; third, Hudspeth's interest is not limited to the enjoyment of the income, nor is his right simply a right to support; fourth, an absolute estate in fee simple is vested in Hudspeth; fifth, Hudspeth is given the right of possession, of managing and controlling the property, and of receiving the whole income therefrom without let or hindrance.

In short, the conveyance to Hudspeth is of the whole legal title with all the incidents and rights appurtenant thereto, with only a futile attempt to annex repugnant conditions thereto to the effect that the land shall not be liable for the payment of any debts he had, or might thereafter contract during a period of thirty years, and that he should not have power to sell, encumber or dispose of the property for a like period except by will, and with the further qualification that if he sold, or attempted to sell or encumber the property during that period the title shall immediately vest in the grantors.

Ever since the statute of *quia emptores* was en-

acted the rule of law has been that, "after an absolute conveyance in fee simple, a clause providing that the grantee shall not mortgage or dispose of the property, is repugnant and void." [Lawrence v. Singleton, 17 S. W. 265; Hall v. Tufts, 18 Pick. 455; Gleason v. Fayerweather, 4 Gray 348; Walker v. Vincent, 19 Pa. St. 369; Laval v. Staffel, 64 Tex. 370].

So, also, "a condition that land conveyed shall not be subject to the grantee's debts is in restraint of alienation and void. Notwithstanding such condition, the land is subject to levy on execution, and passes to an assignee in bankruptcy. Liability for debts is an incident of property, just as the right to convey it is." [1 Jones on Real Property, sec. 663].

In Tillinghast v. Bradford (5 R. I. 205), AMES, C. J., said: "Certainly, no man should have an estate to live on, but not an estate to pay his debts with. Certainly, property available for the purposes of pleasure or profit, should be also amenable to the demands of justice."

It follows that the deed in question, whether executed in pursuance of either a written or verbal direction of Robert N. Hudspeth or by the grantors of their own motion, wholly fails to create a spendthrift trust.

Unless, therefore, the conditions annexed to the absolute grant are sufficient and legal, the land in question was subject to the debts of the defendant Hudspeth.

The defendants tacitly concede that such general limitations, even with a provision for cesser, cannot have the effect in law of cutting down the absolute grant or of withdrawing the property from the reach of the grantee's creditors, but they contend that it is legal to limit the right of the grantee, in fee simple, to convey, mortgage or dispose of the property, and likewise to prohibit it from being seized by the grantee's creditors, for a limited period of time.

In support of their contention the defendants cite and rely upon, 2 Washburn on Real Property (5 Ed.),

p. 9; McWilliams v. Nisly, 7 Am. Dec. 654; Langdon v. Ingram, 28 Ind. 360; Steward v. Brady, 3 Bush (Ky.) 623; Steward v. Barrow, 7 Bush (Ky.) 368.

Washburn lays down the rule that a fee may be limited so as to restrain the conveyance for a certain time. The Pennsylvania case cited holds, that while a general or perpetual restraint of alienation is repugnant and void to a fee simple, nevertheless a partial restriction for a particular time or against conveying to a particular person, is good.

The same general doctrine is stated in the Indiana case cited, although the real estate there involved was a trust estate, and the direct question here involved was not there decided.

In Steward v. Brady, 3 Bush (Ky.) 623, the land was devised subject to a limitation upon alienation until the devisees attained the age of 35 years, and it was held a valid restriction against her voluntary disposition of the property, but insufficient to prevent the land being sold for the payment of her debts.

On the other hand, Jones on Real Property, sec. 662, points out that a condition attached to an absolute fee that the grantee shall not alienate within a limited time, has been held void, in Murray v. Green, 64 Cal. 363; Mandlebaum v. McDonell, 29 Mich. 78; and McCleary v. Ellis, 54 Ia. 311.

In Overman's Appeal (88 Pa. St. 276), the Supreme Court of Pennsylvania, speaking to this subject, said: "It contravenes that general policy, which forbids restraints on alienation and the non-payment of honest debts. . . . Property tied up for half a century contributes nothing to the general wealth, while it is a great stretch of liberality to the ownership of it to suffer it to remain in this anomalous state for so many years after its owner has left it behind him. Clearly it is against public interest that the property of an after future generation shall be controlled by the deed

of a former period, or that the non-payment of debts should be encouraged.''

It is the policy of the law in this State to permit the creation of spendthrift trusts, and to allow the owner of property to apply a portion, or the whole thereof, to the maintenance and support of those he wishes to provide for and who are not able to control and manage their own affairs. So long as such a conveyance does not offend against the law of perpetuity, and so long as the conveyance is a proper trust, the courts will observe the wishes of the donor. So, too, it is competent for the owner to convey or devise property, in trust, for the benefit of those the donor wishes to befriend, and such trusts may continue for a limited period, or even during the life of the beneficiary.

In all such cases, however, the beneficiary has only an equitable interest and not the fee in the land. Such rules, however, do not apply where the conveyance is absolute to the donee coupled with either a perpetual or limited power of alienation, or attempts to place the property beyond the reach of the creditors of the donee. The better rule and the better reason is that such limitations or conditions cannot be grafted upon a fee simple estate, because they are repugnant to the absolute ownership incident to the fee. Donors who have such limited confidence in their donees should create spendthrift trusts, and not, as here, attempt to evade and violate fundamental and wise provisions of law in reference to mere legal estates.

It follows that the conditions against alienation or liability for debts in the deed here involved are void, because they are repugnant to the absolute ownership granted by the deed to the grantee.

## II.

Defendants next contend that the trial court erred in excluding the certified copy of the judgment. The gist of this contention is that the certified copy showed

that the judgment was not a final judgment, because the motions for new trial and in arrest had not been acted upon at the time the execution was issued.

The trial court properly excluded the evidence offered, for the reason that under the issues tendered by the defendants, and conceded by the plaintiffs, the judgment under which the execution issued, was alleged to be a final judgment. Such being the issues it was incompetent for the defendant to contradict them.

### III.

Lastly, the defendants contend that the sheriff's deed is void for the reason that it does not affirmatively appear therein that the defendant Hudspeth was afforded an opportunity to select the portion of the land which he would hold as his homestead.

The deed in question recites that commissioners were appointed and that they set apart fifty acres as a homestead for the defendant. The deed does not affirmatively show that, prior to the appointment of the commissioners, the sheriff gave the defendant, Hudspeth, an opportunity to choose that portion of the land he would select as his homestead. It is also true, that the defendant offered no evidence whatever tending to prove that the sheriff had failed in his duty in this regard.

Section 3617, Revised Statutes 1899, which was the law in force at the date of the levy and sale under the execution in this case, provides, that when an execution is levied upon a homestead, the homesteader shall have a right to designate and choose the part of the land to which the exemption shall apply, "and upon such designation and choice, or in case of a refusal to designate or choose, the sheriff levying the execution shall appoint three disinterested appraisers, who shall, first being sworn to the faithful discharge of their duties, fix the location and boundaries of such homestead,

and the sheriff shall then proceed with the levy of such execution upon the residue of such real estate, as in other cases; and such proceedings in respect to the homestead shall be stated in return upon such execution.''

This court has frequently held that, unless the sheriff gives the homesteader a fair opportunity to make his selection, the sale is void, and that until such opportunity is afforded and such homesteader refuses to make a selection, the sheriff has no power to have a homestead set apart. [Macke v. Byrd, 131 Mo. 682; Brewing Association v. Howard, 150 Mo. l. c. 450; Keene v. Wyatt, 160 Mo. 31.]

Ordinarily the law is that an officer is presumed, in the absence of a showing to the contrary, to have performed his duty. Under this general presumption a sheriff, except for the provisions of the statute, would be presumed to have performed his duty and to have given the homesteader an opportunity to designate and choose the portion of the land he desired to retain as his homestead. But a homestead is purely a statutory creature, and the statute in this State has prescribed the steps which must be taken before land which is, in whole or in part, a homestead, can be lawfully subjected to seizure and sale.

The section of the statute quoted requires the sheriff, first, to give the homesteader a fair opportunity to make a choice and selection, and only authorizes the sheriff to have the homestead set apart after the homesteader has refused to designate or choose. If the statute stopped here the general presumption of law that an officer has performed his duty would obtain. But the statute expressly requires that ''such proceedings in respect to the homestead shall be stated in return upon such execution.'' This statute destroys the general presumption of law, aforesaid, and expressly requires that all of the preliminary steps provided to be taken before property in which a homestead right ex-

ists can be sold must be stated in the return upon the execution.

But whilst such are the provisions of the statute as to the return, there is no provision in the statutes that the sheriff's deed shall contain all of the recitals which the statute requires the return or execution to set out. The return of the sheriff on the execution, in question here, is not contained in the record, nor is there any evidence that it did not fully comply with the requirements of the statute. The defendants, therefore, have wholly failed to afford the foundation upon which the statute bases their right to make the objection to the validity of the sale here contended for. From such failure so to do, it is fairly inferable that no such basis existed, and as the statute does not require such recitals in the sheriff's deed, and only requires them to be stated in the return on the execution, this contention of the defendants must be resolved against them.

## IV.

It is said by defendants that the trial court erred in treating this case as a case in equity. The answer of the defendants set up an equitable defense but asked no affirmative, equitable relief. The case, therefore, is a case at law, and not one in equity. [Mastin v. Turnbaugh, 153 Mo. 172.] The defendant, however, failed to preserve any exception to this action of the court, but on the contrary acquiesced therein, and tried the case as if it was one properly cognizable in equity. They are, therefore, not in position now to assign this as an error. In view, however, of what is hereinbefore said, it is immaterial whether the case be treated as one in equity or one at law, for in either event the result would be the same.

The seventy acres of land in dispute were sold by the sheriff for the insignificant sum of $50, and it would appear a great hardship to the defendant to lose the land for such a price, and therefore this court has

sought, with great care, to find some ground upon which to set aside the sale, to the end that the land may be made to realize its full value, but, after a careful and painstaking examination of the case, the court is unable so to do and the defendant Hudspeth must suffer the consequences of his own failure to see, at the proper time, that the land brought its full value.

Finding no error in the record, the judgment of the circuit court is affirmed. All concur.