**ESTES v. ESTES et al. (No. 8874.)***

(Court of Civil Appeals of Texas. Dallas.
Oct. 27, 1923. Rehearing Denied
Nov. 24, 1923.)

1. Trusts ⬦═28—Nature and elements of a "spendthrift trust" stated.

A "spendthrift trust" is one created to provide a fund for maintenance of beneficiary and to secure him against his improvidence or incapacity; its creation must be clearly manifested, and there must be a trustee to administer the trust as directed by donor, and provisions against alienation and liability for donee's debts must appear by express words or necessary implication.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Spendthrift Trust.]

2. Wills ⬦═682(2)—Will held not to forbid alienation of remainder on which trust did not operate.

Where a will gave possession and control of property to husband of testatrix for life, stating that rents, so far as necessary, were to be used for the support of himself and the support and education of a son, and gave defeasible remainder to the son and contingent remainder to the husband, it created an intermediate estate for the benefit of both during the husband's lifetime, on which alone the trust, if one was created, operated, and since the trust did not depend on ownership of the remainder, its alienation by the son was not forbidden.

3. Execution ⬦═265—Execution against vested remainder did not affect intermediate estate subject to trust.

Where a trust, if created, operated only on an intermediate estate created in favor of trustee and devisee to endure during lifetime of trustee and devisee to endure during lifetime of trustee, and did not affect the vested remainder of devisee in such estate, a purchaser under an execution sale levied against the remainder acquired no interest in the intermediate estate, his purchase being subject to such estate.

4. Execution ⬦═44—Vested remainder may be taken in execution for remainderman's debts though property in trust for trustee's life.

A vested remainder may be taken in execution for remainderman's debts, though intermediate estate for trustee's life forms the basis of a trust.

5. Wills ⬦═658—Restraint on transfer of property by remainderman before reaching 30 years of age held inapplicable.

A provision in a will against alienation by devisee, until he reached 30 years of age, of property given in trust with remainder to devisee, held to apply only in contingency that trustee should have died before devisee reached his majority and the control of the property passed to another guardian, and not to invalidate a transfer by devisee of the remainder, when 27 years of age; the condition of having another guardian having not yet come into existence.

Appeal from District Court, Collin County; Silas Hare, Judge.

Action by Howell B. Estes against Alice Estes and others in trespass to try title to certain property. Judgment for certain defendants, and plaintiff appeals. Affirmed.

Merritt, Leddy & Merritt, of McKinney, for appellant.

Smith & Abernathy, of McKinney, and W. B. Hamilton, of Dallas, for appellee.

JONES, C. J.   This suit was filled by appellant, as plaintiff below, against appellees, defendants below, in trespass to try title to certain business property located on the north side of the square in the city of McKinney, Tex. The case was tried before the court without a jury, and resulted in a judgment that appellant, as plaintiff, take nothing by his suit. Appellant has duly appealed the case to this court, and has challenged the correctness of the judgment by appropriate assignments of error.

The petition upon which appellant went to trial was based upon three counts: The first count being a straight suit in trespass to try title; the second count alleging that plaintiff is the owner of the land under and by virtue of the will of Nannie Estes, claiming that such will created an active or spendthrift trust in favor of appellant's father, Bennie S. Estes, and that the attempted conveyance of said land by the said Bennie S. Estes and by his creditors under execution during the period of said trust is void; and that plaintiff, being the only heir of Bennie S. Estes, is entitled to recover; the third count was for an accounting for rents under said trust.

The facts forming the basis of this suit are as follows: B. T. Estes and Nannie Estes were husband and wife. Bennie S. Estes was the father of appellant, and the only issue of this marriage. The land in controversy was the separate property of Nannie Estes, having been inherited from her father. Bennie S. Estes was born May 19, 1874; he married January 1, 1896, and to this marriage, on November 10, 1896, there was born one child, appellant in this case. Bennie S. Estes died intestate September 9, 1912. Nannie Estes died in Collin county, Tex., September 14, 1884, leaving a will which had been executed by her on the 22d day of July, 1884, which will is as follows:

"First. I nominate, constitute and appoint my beloved husband, Ben T. Estes, to be my only executor of this, my will, and it is my desire that no bond be required of him as such, and that no proceedings be had in any court in reference to my estate except to probate this will and return an inventory of my estate.

"Second. I also appoint my said husband, B. T. Estes, guardian of the estate of our only child, Bennie Estes, and as such guardian

it is my desire that no bond shall be required of said B. T. Estes, nor any proceedings be had in any court in reference to said estate except the probate of this will and return of the inventory, as above specified.

"Third. I desire that the said B. T. Estes, as my executor and guardian of our said child, hold possession of and control a certain lot and storehouse in the town of McKinney on the north side of the public square (the same being bequeathed to me by my father) during the natural life of my said husband, said B. T. Estes, and that he shall use so much of the rents of said house as he may deem necessary for the support of himself and the support and education of our said son, Bennie Estes, and the payment of insurance and taxes and repairs on said property, and the surplus of said rents, if any there should be, to be invested for the benefit of our said son, as said B. T. Estes may deem best.

"Fourth. It is* my desire in case Bennie Estes shall die without issue before the said B. T. Estes shall die, then the title to said property shall vest in the said B. T. Estes, and at his death he shall give the same by will to any one or more of my blood relatives as he, the said B. T. Estes, shall desire and think proper at that time.

"Fifth. In case said B. T. Estes shall die leaving the said Bennie Estes surviving him, it is my desire that the said property shall pass to him if of age, or to his guardian if he still be a minor, but the said property is not to be sold by said guardian nor by Bennie Estes until he shall arrive at the age of thirty years.

"Sixth. It is the intention hereby upon my death to vest the title to said property in the said Bennie Estes, subject to the foregoing provisions.

"Seventh. I will and bequeath to my said husband B. T. Estes, all of my interest in all other property, owned by us, to be used by him for the benefit of himself and our said son, Bennie Estes, in such manner as he may think best."

B. T. Estes died October 31, 1920, leaving a will and making his second wife, Alice Estes, one of the appellees herein, his beneficiary as to the property in controversy. Both of these said wills were duly probated in Collin county. On February 26, 1913, B. T. Estes sold to appellee ·R. L. Waddell a small strip of the land in controversy, and this strip of land did not pass with the will to Alice Estes. These two appellees, subject to appellant's claim as alleged in his petition, were the owners of the land in controversy at the time of the trial. The other appellees were only tenants, and filed their disclaimers. Upon the death of Nannie Estes, B. T. Estes entered into possession of the said land under the will of said Nannie Estes, and received the rents and revenues arising from the same up to the time of his death, which amounted to $700 a year. Since his death, appellee Alice Estes has been in possession of said premises, and has received as rents and revenues therefrom the sum of $75 per month.

B. T. Estes acquired the land in controversy by the following transfers: On July 2, 1901, the said property was sold under execution, and was bought by B. T. Estes for a recited consideration of $133.28 and the settlement of a judgment against Bennie Estes. The evidence disclosed that a much greater consideration was actually paid Bennie Estes. On July 3, 1901, Bennie Estes, by warranty deed, conveyed to B. T. Estes the land herein for a recited consideration of $513 paid and $1,380 by note payable $20 a month. On July 4, 1901, Bennie S. Estes made a quitclaim deed to B. T. Estes for a recited consideration of $5,000 paid. On December 3, 1901, Bennie S. Estes delivered to B. T. Estes an instrument reciting the payment of $1,866.72 received by him from B. T. Estes, and wherein he acknowledged receipt of the consideration recited in the deed from the constable to B. T. Estes.

In addition to the above facts, which are undisputed, the trial court made the following findings of fact, which are amply sustained by the evidence:

"That the purchase of the property by B. T. Estes at the constable's sale and from Bennie Estes was open and fair, and that a fair and adequate consideration was paid by ·B. T. Estes for the property."

"That Bennie Estes ratified and confirmed the sale and retained the benefits thereof, and recognized the property as the property of B. T. Estes after he became 30 years of age and up to the time of his death."

[1] More than 20 years having elapsed from the time B. T. Estes received the various deeds conveying to him, by Bennie S. Estes, the title to the land, and he having subsequently ratified these conveyances after he had reached the age of 30 years, appellee Waddell's title to the portion of the land conveyed to him by B. T. Estes, and appellee Alice Estes' title to the portion retained by B. T. Estes and devised to her by his will, must be held valid, unless the will of Nannie Estes, with the estate in the land devised to Bennie Estes as its basis, created a spendthrift trust in favor of Bennis S. Estes with B. T. Estes as trustee. If the latter be true, then the land in controversy was not subject to conveyance by Bennie Estes, nor subject to be taken in execution to satisfy a judgment against him. A spendthrift trust may be defined as a trust created to provide a fund for the maintenance of the beneficiary, and, at the same time, to secure it against his improvidence or incapacity. Such trusts when created by a donor or devisor of property in this state are upheld, and the property is exempt from liability for the donee's debts, and not subject to alienation by him. The law is not concerned as to whether a donee or devisee wastes property given or devised to him or not, but it is concerned to protect the donor's right

of property and his right to prescribe the terms on which his bounty shall be enjoyed, unless, of course, such terms are repugnant to the law. However, as such a gift or devise takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment, they cannot complain that the donor has provided that the property or income shall go or be paid personally to the beneficiary and shall not be subject to the claims of creditors. 25 R. C. L. pp. 353, 354. The creation of such a trust must be clearly manifested by the instrument seeking to bring it into existence. There must be a trustee to take the legal title to the property and administer the trust as directed by the donor or devisor. Kessner v. Phillips, 189 Mo. 515, 88 S. W. 68, 107 Am. St. Rep. 368, 3 Ann. Cas. 1005; Nunn v. Titche-Goettinger Co. (Tex. Com. App.) 245 S. W. 421. The donor or devisor must either specifically or by clear implication provide that the property to be administered for the benefit of the beneficiary must be immune from the claims of creditors, and, unless this appears from the instrument under inquiry, it cannot be construed as creating a spendthrift trust.

[2] In the instant case the intention of the testatrix as to the disposition of the property in question, and of her intention in reference to her husband, B. T. Estes, and her son, Bennie S. Estes, is in the main clear and free from ambiguity. Bennie S. Estes was given a vested title in remainder to this property, subject only to defeasance on his death without issue prior to the death of B. T. Estes. B. T. Estes was given possession and control of the said property during his lifetime, with a contingent remainder depending on the death of Bennie S. Estes without issue while B. T. Estes was living. B. T. Estes is also made testamentary guardian for Bennie S. Estes, he being only 10 years of age at the time of the execution of the will and at the time of the death of the testatrix. The life estate, if it may be termed such, given B. T. Estes in the property, is qualified to the extent that the income and revenue arising from the property is not to be used entirely for himself, but is to be used for the joint maintenance of himself and Bennie S. Estes, and also for the purpose of the payment of insurance, taxes, and repairs on the property. It is qualified to the further extent that, if there is any excess remaining from the rents and revenues of the property after it has been put to the above-named uses, it is to be invested for the benefit of the said Bennie S. Estes. It is clear that an intermediate estate was created by this will in favor of husband and son to endure during the lifetime of the husband, B. T. Estes.

[3, 4] If a trust is created by paragraph 3 of the will, it operates only on this intermediate estate devised to B. T. and Bennie S. Estes. It does not depend upon Bennie Estes continuing as the owner of the vested remainder and hence does not operate to forbid its alienation by him. When the execution in the judgment against Bennie S. Estes was levied upon this vested remainder, it did not touch the intermediate estate which formed the basis of this trust, and whose existence was alone necessary for its operation. The purchaser under the execution sale did not have conveyed to him any interest whatever in this intermediate estate, and his purchase was necessarily subject to such estate, and subject to the possession, control, and trusteeship of B. T. Estes in said property during his lifetime, and this regardless of whether B. T. Estes had been the purchaser or some third party had acquired the title to this property. The court, in effect, finds that, if a trust was created with Bennie S. Estes as beneficiary, it continued to be performed by B. T. Estes, as trustee, after the sale, in the same manner as it had been performed before said sale and in conformity to the will. A vested remainder is subject to be taken in execution for the remainderman's debts, regardless of whether the intermediate estate, independent of the estate in remainder, forms the basis of a trust or not. Caples v. Ward, 107 Tex. 341, 179 S. W. 856. Finding that no active trust operated upon the estate in remainder held by Bennie Estes, appellant's assignments of error in relation thereto are overruled.

[5] It is true that paragraph 5 of the will provides, in effect, against alienation by Bennie S. Estes of his property until he shall have reached the age of 30 years, but this provision is based upon the contingency that B. T. Estes shall have died before Bennie S. Estes has reached his majority and the possession and control of the property passed from B. T. Estes into the hands of another guardian. At the time of the various transfers by Bennie S. Estes, which were in 1901, he was 27 years of age, and the condition of his having a guardian, other than B. T. Estes, could not come into existence. Bennie S. Estes lived until he was 38 years of age, 8 years beyond the period when, in any event, the alienation of the property was restricted, and the court finds that after he arrived at the age of 30 years he recognized the transfer as valid, and ratified it.

Finding no reversible error, the case is affirmed.