## OLMSTEAD *v.* OLMSTEAD.

1. HUSBAND AND WIFE—SEPARATE MAINTENANCE—EVIDENCE.
   Wife's testimony in her suit for separate maintenance *held,* so full of inconsistencies as to render it unworthy of belief, especially with respect to sum claimed to have been loaned to husband while she was married to her second husband, defendant's predecessor, and as to charge against defendant as to his unnatural conduct (CL 1948, § 552.301).

2. SAME—SEPARATE MAINTENANCE—EVIDENCE.
   Plaintiff wife *held,* not entitled to decree of separate maintenance under evidence presented, showing that within 6 years before her marriage to defendant she had been the wife to 2 other men and divorced from each, had kept company with defendant during latter part of her second marriage before divorcing the second husband before defendant knew of her marriage, perjured herself to suit her own convenience, marriage to defendant lasted only 15 months and she had extorted various notes and an alimony agreement from him without the con-

REFERENCES FOR POINTS IN HEADNOTES
[2-4] 26 Am Jur, Husband and Wife §§ 326, 327.
[7] 3 Am Jur, Appeal and Error § 731.

sideration of a continuance of marital relations (CL 1948, § 552.301).

3. SAME—SEPARATE MAINTENANCE—ACCOUNTING—CANCELLATION OF INSTRUMENTS—CONSIDERATION.

Note for $7,500 given by husband to wife before their marriage and while she was married to his predecessor is ordered cancelled and held for naught as without consideration in her suit for separate maintenance in which she also sought an accounting (CL 1948, § 552.301).

4. SAME—SEPARATE MAINTENANCE—ACCOUNTING—CANCELLATION OF INSTRUMENTS—ALIMONY—COERCION—CONSIDERATION.

Agreement for alimony and support is ordered cancelled and held for naught, in wife's suit for separate maintenance in which she also sought an accounting, as having been obtained by coercion and mental duress and because of refusal of consideration therefor by continuance of marital relationship (CL 1948, § 552.301).

5. WILLS—PROBATE COURT—JURISDICTION—SEPARATE MAINTENANCE.

The allowance or disallowance of a will is with the probate court as a matter of original jurisdiction; hence, such matter is not passed upon by Supreme Court on appeal in wife's suit for separate maintenance and accounting (CL 1948, § 552.301).

6. HUSBAND AND WIFE—SEPARATE MAINTENANCE—ACCOUNTING—RETIREMENT FUND—ESTATES OF DECEDENTS.

Retirement fund, received by plaintiff wife in suit commenced by her bill for separate maintenance and for an accounting after husband had died pending his appeal from decree for wife, is treated as due from her to his estate after reversal of decree (CL 1948, § 552.301).

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SEPARATE MAINTENANCE—DIVORCE—DEATH PENDING APPEAL.

Husband's cross bill for divorce because of extreme cruelty, filed in wife's suit for separate maintenance, is not considered on appeal from decree for wife, where he had died during pendency of appeal.

8. SAME—DE NOVO HEARING BY SUPREME COURT—SEPARATE MAINTENANCE—DIVORCE.

The Supreme Court hears *de novo* a wife's suit for separate maintenance in which husband filed cross bill for divorce on ground of extreme cruelty (CL 1948, § 552.301).

9. COSTS—SEPARATE MAINTENANCE—DIVORCE—FAILURE OF EITHER
SIDE TO PREVAIL IN FULL.

   No costs are allowed either party in wife's suit for separate
   maintenance wherein husband had filed a cross bill for divorce,
   and in which neither side had prevailed in full (CL 1948,
   § 552.301).

Appeal from Kent; Souter (Dale), J. Submitted
January 13, 1954. (Docket No. 35, Calendar No.
46,023.) Decided July 6, 1954.

Bill by Lucille E. Olmstead against Charles H.
Olmstead for separate maintenance, with cross bill
for divorce. Decree for plaintiff. Defendant died
pending appeal. Further proceedings by Ruth Dex-
ter, special administratrix. Petition to amend de-
cree denied. Administratrix appeals. Reversed and
decree ordered entered.

*Linsey, Shivel, Phelps & Vander Wal (Robert B.
Linsey,* of counsel), for plaintiff.

*Fred Roland Allaben (Craig E. Davids,* of coun-
sel), for defendant.

REID, J. Lucille E. Olmstead, herein referred to
as plaintiff, filed her bill of complaint, January 3,
1952, against Charles H. Olmstead, herein referred
to as defendant (her third husband) for separate
maintenance.

The decree of the circuit court entered March 11,
1953, awarded plaintiff separate maintenance, re-
quired defendant to pay $40 per week alimony for
the next 15 years, and adjudicated defendant as in-
debted to plaintiff for $7,500. The court denied de-
fendant's motion for a rehearing. Defendant filed
his claim of appeal, March 26, 1953, and died, July
21, 1953. Ruth Dexter was appointed special ad-

ministratrix of defendant's estate and appears in this Court on behalf of deceased defendant.

The parties were married, September 18, 1950, one week after plaintiff's divorce from her preceding husband. No children were born of the marriage.

In her bill, plaintiff claims that she was, during the marriage, afflicted with arthritis; that defendant caused her great pain by twisting her fingers; that she required treatment for an extremely nervous condition caused by defendant's acts of extreme cruelty; that defendant endeavored to choke her; that on one occasion he used a knife on her right hand causing a severe wound and scar; she further testified that he demanded of her unnatural sex acts and that he stayed away from home without her knowledge of his whereabouts for some days at a time. She also produced several notes written to her by defendant expressing great affection for her and asking forgiveness for his meanness which meanness however was not expressly defined in the notes.

Defendant in his answer denied the several acts of extreme cruelty she alleged against him, and in his cross bill prayed for a divorce, claiming several acts of extreme cruelty on plaintiff's part toward him; that she attacked him with a knife and she was wounded when he tried to take the knife away from her; that she attempted dictatorial control toward him, control of details of conduct, telling him in whose automobile he might ride, where to wait for buses, what his relationships might be with his sons by a former marriage, claiming to him that he is not actually the father of his sons; that if he does not concede to her view in these things, she works herself into a fit of hysteria, weeps, abuses and grabs him, hangs onto him, strikes him and resorts to every type of acting of which she is capable, in order to subject him to her complete control; that she has insisted on keeping in close touch with her preceding

husband, Roy T. Jennings, saying that he was all alone, had hurt himself and needed company.

Before plaintiff filed her bill for divorce from her preceding husband (her husband number 2), Roy T. Jennings, she began keeping company with defendant shortly after October 14, 1949; he says it was without his knowing she was a married woman.

Plaintiff claims in her bill and in her testimony that her nervous condition, making her unable to work, was caused by defendant's cruelty; but her physician, Dr. Mason S. Maynard, testified that before she divorced Mr. Jennings she made the same complaints regarding her inability to work and her nervous condition that she is making now.

Plaintiff offered in evidence a promissory note dated June 12, 1950, payable to plaintiff as Mrs. Jennings 25 years after date, for $7,500 without interest, secured by irrevocable will and insurance beneficiary, signed by defendant. This was 3 months before her marriage to defendant (September 18, 1950) and while she was still wife of Jennings against whom she filed a bill for divorce, July 6, 1950. Plaintiff testified that the consideration of the note was actual cash in that approximate amount which she loaned plaintiff before the date of the note. She testified that her father gave her that money at various dates before his death in 1948. She testified,

"I kept no record of the gifts that my father made to me. I kept no record at all of the moneys that I claim I took out of those gifts to spend on Mr. Jennings."

She further testified:

"When I testified in September, 1950, on the divorce proceedings as against Mr. Jennings, I claimed I then owned a note for $7,500 that Mr. Olmstead owed me, secured by 2 insurance policies.

"*Q.* Well, now isn't it true in that divorce case on that testimony that this question was asked you: 'What property do you own?' And isn't it true that yon answered that question by saying, 'Well, just the furniture and a car.'

"*A.* That was the property I owned. It wasn't money."

It further appears that in her bill of complaint against Roy T. Jennings filed July 6, 1950, she stated, speaking of herself, "She has no means for her support, having used all her money to pay defendant's bills."

She further testified:

"It was true as I swore in the bill of complaint that I had used all of my money as of July 6, 1950, to pay the bills of Roy T. Jennings. I had used all the money by then."

Plaintiff filed a bill for divorce from her first husband Maxwell Barclay, in October, 1945, respecting which bill of complaint, she testified:

"That statement in the bill of complaint, when I say that I was destitute and without means in 1945 was untrue, the way you say it. I had that money for the house, and all I did was wait until I was better."

We have in mind that she testified that her father commenced giving her gifts of money when she was "real little," that she was born in 1919; that sometimes at Christmas time he gave her $100, sometimes a birthday present of $75; that her father died before she met defendant. She testified that she kept the money for a house and kept it in a metal box that she does not now have; that she got rid of it (the box) when she "gave Mr. Olmstead the money." No bankbook was produced by plaintiff showing any account of any such sum of money as she claims she loaned to defendant on the note in question. De-

.fendant testified that he never received from plaintiff any money consideration for the note in question.

It is apparent from plaintiff's testimony that she now claims to have had during her marriage with her first husband, Barclay, a considerable portion of the total of $8,600 which she claims her father gave her in different sums. Her sworn statements in her bill against Barclay, and later in her sworn bill against Jennings, are inconsistent with and contradict her testimony in the instant case as to having such sum of money concealed in the metal box during the period covered by those 2 marriages. There are various inconsistencies in her testimony on this hearing; there are the contradictions between her testimony in the case compared with the sworn statements in her 2 previous bills; these inconsistencies render her testimony in general in the instant case unworthy of belief.

Without her testimony, there is no basis for a decree of separate maintenance, as prayed for by her, unless it be the written messages in which defendant confesses being mean to her, expressing his love for her and seeking forgiveness. Defendant says that he was compelled to write such concessions of wrongdoing coupled with requests for forgiveness. He testified that such statements were extorted from him, "because that is what she requested. Without having done same, why I would be reprimanded for same, and would expect all kinds of treatment for not having done things in showing her the treatment that she so rightly deserved, as she thought." Plaintiff obtained advantages by unfair means. The fact that defendant was willing to make such abject apologies for what in actuality were minor differences between them, is evidence of his complete infatuation, his kindness of disposition, and his willingness to do everything in his power to prevent a separa-

tion from her. The charge against him of unnatural conduct is without credible support.

In determining what should be done with plaintiff's petition for separate maintenance, certain broad facts stand out: (1) Within 6 years before her marriage to defendant, she had been the wife of 2 other men from whom she obtained decrees of divorce; (2) she kept company with defendant during the latter part of her second marriage, before divorcing Jennings, for several months before defendant knew of her marriage; (3) she perjured herself confessedly, used her oath without regard for the truth and to suit only her own convenience; (4) her marriage with defendant lasted only 15 months; (5) she threw false, hysterical fits thereby extorting from defendant not only the $7,500 note in question but also an alimony agreement, a designation of plaintiff as beneficiary under American Box Board retirement fund, as well as some dozen or more apologetic notes asking forgiveness for imaginary or unimportant acts of his.

The facts as a group are extraordinary and differ widely from the common run of events in married life. Plaintiff failed to give defendant the consideration for which he gave her the various writings, *i.e.,* continuance of marital relations. The court should not have departed from the limits of its jurisdiction in separate maintenance cases nor awarded plaintiff the entire property of defendant in addition to the award of $40 per week for plaintiff's support.

Plaintiff expressly founded her petition on CL 1929, § 12794, which is CL 1948, § 552.301 (Stat Ann § 25.211). See *Sullivan* v. *Sullivan,* 323 Mich 397.

The testimony of plaintiff is rejected, and the so-called "love notes" are found to be no sufficient foundation to prove plaintiff's claim to separate maintenance. The decree for separate maintenance and for

alimony is reversed. Plaintiff wife in an amendment to her petition asked for an accounting. The note for $7,500 is cancelled and held for naught as wanting consideration. The agreement for alimony and support is likewise cancelled and held for naught as having been obtained by coercion and mental duress and because plaintiff refused the consideration for the agreement, *viz.*, continued marital relationship. We do not pass upon the will obtained nearly contemporaneously with the note for $7,500 and the agreement for alimony, because the allowance or disallowance of the will is with the probate court as a matter of original jurisdiction.

The plaintiff received $6,564.06, being the American Box Board retirement fund, after defendant's death, which fund for reasons heretofore recited, is to be treated as due from her to the estate of defendant. Because of the death of defendant pending his appeal, his cross bill for divorce is not considered.

We hear the case *de novo* and a decree will be entered in this Court as herein indicated, reversing the decree entered in the circuit court. No costs, neither party having prevailed in full.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, Dethmers, and Kelly, JJ., concurred.