Breitel, J.
The assignees of the remainder interest of Chance M. Vought, Jr. in a testamentary trust created by his father appeal from an order and decree holding the assignments void. The Surrogate’s Court, New York County, adjudged that the one-half remainder interest in the trust created under the will of the father vested indefeasibly in Chance M. Vought, Jr. upon the testator’s death; that the will validly *167 prohibited assignment of the principal of the trust; and that, therefore, the purported assignments of the principal were void and unenforceable. The Appellate Division unanimously affirmed without opinion (30 A D 2d 805), and granted leave to appeal on three certified questions.
The main issue on this appeal is the alienability of a vested principal remainder limited upon an entrusted life estate where the settlor has specified in the creating instrument that the interests of all beneficiaries shall be inalienable.
The testator had Created, by his 1930 will, trusts for the benefit of his parents, his wife, and two sons. A life income trust in favor of his widow was provided with direction that on her death the principal should be paid over in equal shares to his two sons. One of the sons, Chance, the namesake of his father, predeceased his mother by a little over a year and a half. He left a widow and children surviving. Since the remainder was vested it would, unless previously alienated, become an asset of Chance’s estate. But during his and his mother’s lifetime Chance executed a number of assignments of his interest in the remainder, three aggregating $1,100,000 and a fourth for the balance. The trust corpus in which Chance’s remainder interest would be one half was valued on the present accounting at $1,857,876.20.
The courts below held that the remainder was vested and that the assignments were void because, under the will creating the trust, the remainder was not assignable.
The threshold question is whether the will by its terms bars alienation of principal. The pertinent portion of article Seventh reads: ‘ ‘ the principal shall not be assignable, nor can the income or principal of said Trust funds become attached by garnishment or other legal proceedings while in the hands of the Trustees, except to the extent permitted by law.” As found by the Surrogate and Appellate Division, the language evidences an intent by the testator that the principal be inalienable. The assignees’ argument, namely, that the clause “except to the extent permitted by law ’ ’ means that the principal is fully alienable because the law so permits, would render the “ inalienability ’ ’ provision meaningless, for so read it permits alienation as much as if the testator had specified alienability rather than its opposite.
*168 Given the settlor’s manifest intention, the more difficult question involves the legal effect of. the inalienability clause. The assignees, or their representatives, urge that the attempted restraint on alienation was itself illegal and, therefore, void, and consequently that the assignments, regardless of the testator’s intention, are fully effective. They argue that at common law all life and remainder interests, equitable as well as legal, were alienable, and incapable of being rendered inalienable by the settlor, and that by virtue of statute alone are personal income trusts inalienable. They emphasize that the statute is explicit in providing that any beneficial interest is assignable except as provided in the statute, and that a restraint on alienation by the settlor of the trust is not included as one of the exceptions.
The precise question of whether a settlor has the power to make inalienable a principal remainder limited on an entrusted life estate is one of first impression. In this State, although there are many precedents which offer close analogies, they yield no conclusive or authoritative holding or doctrine. It is evident, however, that the prevailing weight of decisional authority in the Nation, based more or less on common-law principles, would sustain the restraint on alienation of a remainder limited on an equitable life interest, if so provided by the creator of the trust. Moreover, in policy, there are no persuasive modern reasons, and aside from conceptual and historical grounds for nullifying attempts at restraining alienation on transfers in fee absolute, no compelling legal ground why the creator’s wishes must be ignoréd during the measured period involved. Consequently, it is concluded that the determinations of the Surrogate and the Appellate Division should be affirmed.
The testator died in 1930 and left a will executed that year. The trust in question provided that the testator’s widow should be the life beneficiary of the income to be paid and applied to and for her use and benefit, and on her death the principal to he paid free of the trust in equal shares to testator’s two sons, Chance and Peter. The widow died in 1965, and Chance, as noted earlier, died before his mother in 1964. From October, 1959 to August, 1960 Chance executed the assignments which *169 purported to transfer entirely the remainder interest for prices undisclosed, hut undoubtedly at a considerable discount.
Despite some 120 years of case law and a continuous succession of statutes commencing in 1828, there can be found no plain statutory prohibition of the creation, of an inalienable equitable interest in the principal of a trust, nor any judicial holding rendering invalid such a provision for inalienability.
The earliest judicial decisions, all decided after passage of the legislative enactments, but dealing with trusts created before the enactments became effective, applied or referred to the * ‘ English ” or “ common law ’ ’ rule. That rule, as developed in cases construing instruments made after 1775, New York’s reception date (see N. Y. Const., art. I, § 14) made ineffective attempts to create inalienable trust interests. The cases actually involved only income trusts but were resolved on doctrine applicable also to remainders of principal (see, e.g., Brandon v. Robinson, 18 Ves. 429 [1811]; Green v. Spicer, 1 Russ. & M 395 [1830]; Snowdon v. Dales, 6 Sim. 524 [1834]).
The citation by the New York courts of the English post-reception decisions demonstrates the lack of indigenous law on the subject. Even if the English cases be deemed declarative of English law existing, but not applied, prior to New York’s reception date, they cannot be seriously considered as establishing in New York any substantial body of law, determinative of the rights and interests of a testator and his legatee either before the American Bevolution, or as embodied in an instrument created in 1930.
Stripped of the English authorities, the leading case construing a trust created prior to the enactment of the statutes falls far short of establishing a comprehensive common-law treatment of alienability. Chancellor Walworth in Bryan v. Knickerbacker (1 Barb. Ch. 409 [1846]) held that a judgment creditor could reach the income interest of the beneficiary of a self-settled trust. Other references to the law prior to the statute rely on dictum rather than on the holding in the Knickerbocker case, and they, too, are decided on narrower grounds than their general language concerning inalienability might indicate. Thus, for example, Havens v. Healy (15 Barb. 296 [Cayuga Gen. Term, 1853]) held that a beneficiary’s receiver in bankruptcy could reach portions of a trust to be paid the *170 beneficiary in installments during the beneficiary’s life. The trust contained no restricting language.
The status of inalienability clauses contained in trust instruments, for whatever reason, was never developed judicially by direct decisional holdings. Instead, there is only discussion of the general schemes of property law from which by a purely deductive process one may argue, as do appellants, that inalienability except for life income trusts is proscribed. The failure to confront the issue directly was undoubtedly due to the fact that from the earliest times the inalienability of income trusts was covered by statutes and evidently the issue did not arise with respect to express clauses relating to disposition of principal, either in legislation or in the cases.
The Revised Statutes of 1828, effective in 1830, abolished all express uses and trusts in real property, except those authorized by statute (pt. II, ch. I, tit. II, art. 2, §§ 45, 50). One such authorized trust, was ‘ ‘ To receive the rents and profits of lands, and apply them to the use of any person, during the life of such person ” (id., § 55, subd. 3, as amd. by L. 1830, ch. 320, § 10). It was further provided that “No person beneficially interested in a trust for the receipt of the rents and profits of lands, can assign or in any manner dispose of such interest; but the rights and interest of every person for whose benefit a trust for the payment of a sum in gross is created, are assignable ” (id., § 63).
The inalienability provision was applied first judicially to restrain alienation by the income beneficiary of a trust of personal property (see, e.g., Graff v. Bonnett, 31 N. Y. 9) and then legislatively by adoption of section 15 of the Personal Property Law (L. 1909, ch. 45): “ 1. The right of the beneficiary to enforce the performance of a trust to receive income of personal property, and to apply it to the use of any person can not be transferred by assignment or otherwise. But the right of the beneficiary of any other trust in personal property may be transferred.” (L. 1897, ch. 417, § 3, as amd. by L. 1903, ch. 87, §1.)
These statutory provisions, covering right to income from real and personal property, existed at the time of the making of the will of Chance Vought, Sr., and continue today, in pertinent part in the new legislation (see Personal Property Law, *171 supra; Real Property Law [L. 1909, ch. 52], § 103; EPTL 1-2.15; 7-1.5, subd. [a], par. [1]).
The statute, in making beneficial interests in income inalienable, removed from judicial consideration all but the more technical questions of its application. The reference to other interests, which, according to the provision covering real and personal property in 1930, "may be transferred”, does not resolve the issue of transferability where the creator of the trust has stipulated that they be inalienable. Notably, the statute in making income interests inalienable left no option to the creator. The present case is concerned with the creator’s option to provide for inalienability.
Reported case law on this issue is inconclusive, for no court - appears to have had before it a trust instrument providing for the inalienability, during the term of a life estate, of a beneficial remainder interest in principal, or a cause of action • brought by a purported assignee despite the prohibition of the instrument. Thus, in Havens v. Healy (15 Barb. 296, supra), Matter of Fowler (263 App. Div. 255, affd. 288 N. Y. 697, mot. for rearg. den. 289 N. Y. 756), Bergmann v. Lord (194 N. Y. 70, 74), Heise v. Wells (211 N. Y. 1) and West v. Burke (219 N. Y. 7, 15) where the alienability of remainder interests was upheld, no restriction on alienability had been imposed by the creator. In Matter of Jacob (118 N. Y. S. 2d 842, 843) and Schrader v. Smith (10 Misc 2d 475) it was said, but only in passing, that a provision making principal inalienable could have no effect. Other cases striking down inalienability provisions have not dealt with beneficial interests in future estates at all, but rather with attempts to convey a full fee, followed by restrictions on alienation. Thus Oxley v. Lcme (35 N. Y. 340), Lovett v. Gillender (35 N. Y. 617), Greene v. Greene (125 N. Y. 506) and Matter of Trumble (199 N. Y. 454) struck down provisions rendering principal inalienable not because they were inconsistent with beneficial interests, but because a legal fee simple had in each case been created, and restrictions on inalienability could, therefore, not survive, or otherwise cut down the larger interest conveyed.
The question, then, is whether judicial recognition may be given to an attempt to restrain alienation during the term of the trust. Former section 59 of the Real Property Law, appli *172 cable to personal property by virtue of section 11 of the Personal Property Law (carried forward in EPTL 6-5.1) provided that ‘ ‘ An expectant estate is descendible, devisable, and alienable, in the same manner as an estate in possession.” While it may be argued that the provision allows for no different treatment between beneficial and legal interests, a distinction should be noted between the two. Unlike the restriction on the legal estate, which renders the real or personal property totally untransferrable, the restriction on the beneficial interest does not shackle the principal for, as in the case of the Vought trust, the trustees are fully empowered “ To hold or sell, convey or dispose of the same at public or private sale at such time or times and on such terms as they * * * in their * * * discretion, shall deem advisable ’ ’. The alienability of the legal interest in the particular assets being assured, the common law and the statutory scheme are not disturbed if the power to transfer the beneficial interest in the remainder limited on the trust is suspended for the life term of the trust.
As to whether New York should permit inalienability provisions covering beneficial interests in principal, the issue, as noted by undoubtedly the most distinguished critic of principal inalienability, is one of policy rather than logic (Griswold, Spendthrift Trusts [2d ed.], §§ 554-555, pp. 634-639). Certainly, today, an inalienability provision may be upheld without fear of reviving feudal tenures, mortmain, or of reversing historic trends that wrought their demise, a concern perhaps more real and more strongly felt by courts and scholars in earlier years, when exceptions all too easily developed into governing rules (see Gray, Restraints on the Alienation of Property [2d ed., 1895], §§ 4-6a, pp. 2-4, both noting the current of the law and questioning whether the development of spend-thrift trusts would be an eddy; see, also, .§§ 180, 181, in which Gray concludes that, but for the statutory development, New York, by virtue of Bryan v. Knickerbacker, supra, accepted the English rule).
In the instant case, the issue is whether generally a creator may postpone for.a limited period the beneficiary’s control of material wealth until a time when the beneficiary is believed to be more able to manage it more wisely. Such a desire is not "unnatural in a creator of trusts, nor does it work an undue *173 hardship on those who extend aid to the beneficiary, provided they extend aid with the knowledge that they will not be reimbursed out of the principal against the creator’s wishes.
The weight of authority, where not controlled by statute, supports the power to impose inalienability of principal as well as of life interests (see 2 Scott, Law of Trusts [3d ed.], § 153, p. 1170; see, also, 2 Bogert, Law of Trusts and Trustees [2d ed.], § 222, p. 639, at n. 2). Scott has noted: “ The courts seem to feel that the protection of the beneficiary of a trust should extend not merely to his right to receive income but to his right to receive principal in the future, whether in the meantime he or another person is entitled to receive the income ” (op. cit., at pp. 1170-1171). As a reflection of a trend in favor of allowing principal inalienability, the Restatement, 2d, Trusts, reversing the position of the first Restatement, now allows for inalienability of the principal (compare Restatement, 2d, Trusts, § 153, with Restatement, Trusts, § 153).
In summary, statutory provisions for alienability or inalienability of entrusted interests are to be analyzed on the basis of whether they mandate such conditions or whether they apply unless the creator provides otherwise. To be sure, the rule by statute and decision, because of deeply rooted policies concerned with property being subject to transfer, has been uniformly strict that the transferor has little or no power to impair the alienability of legal title. On the other hand, with respect to equitable estates, there are no definite rules based on actual holdings as distinguished from dicta. Absent strong policy reasons to the contrary, statutory provisions for alienability as to equitable interests need not be read to preclude provision by the settlor to impose inalienability. It must be noted, however, that the statutory restriction on the alienability of personal income trusts is not subject to variation by the settlor. To this extent there is no complete parallelism between the rules governing legal and equitable estates.
The inconsistency becomes more disturbing, and this appellants properly emphasize, when it is observed that the statutes governing equitable interests were deliberately designed to parallel those governing legal estates, and there is historically, and still, direct language to this effect. But the inconsistency is disturbing only because it upsets the neat ordering of legal *174 affairs and, therefore, fails to satisfy a mechanical jurisprudence. There are no good practical or policy reasons presented or suggested to require that legal and equitable estates be treated exactly alike for the purpose of inalienability clauses.
Given the history of the rules and the statutes expressing the rules, giving only limited value to the ideal of consistency of patterns in the law, and according substantial weight to modern policy considerations and the purpose of permitting owners enlarged freedom to dispose of their property as they will unless there is injury to the public, the law of this State should conform to the prevailing weight of authority. In this way, the intended beneficiaries of the remainders of principal will be protected as the settlors intend, and the assignees suffer no loss greater than that for which they bargained on the face of the instruments with which they were dealing. Interests in property are not restrained of alienation or transfer for any greater time than the permissible life interests and the legal title of the particular assets, as earlier noted, is always capable of being transferred.
In the absence of any strong statutory direction, or any developed body of precedent restricting provisions making principal inalienable, the will of the testator should be given effect, and the interest of the assignor be deemed unassignable during the life of the trust.
The assignees argue, however, that even if the interest in principal be deemed unassignable, the assignees should be entitled to that interest now that the trust has ended and the principal is now to be paid out. They argue that it would be inequitable to have allowed the assignor to renounce the assignment, and urge that his estate be charged with his obligation to facilitate a transfer.
Such a result, however, would render meaningless any provision providing for inalienability of the principal for, indeed, the beneficial owner has no present interest to be protected but the right to receive the principal at a later date. If by an assignment during the life of the trust he is deemed to have transferred this sole right of later possession he has transferred virtually all his interest. Moreover, the creator’s wishes would be completely frustrated, the beneficiary not only getting the funds the creator had intended be delayed, but the beneficiary receiv *175 ing a fraction, after discount, of what was eventually intended.
Thus the courts below correctly determined that the assignees were not entitled to the principal of the trust.
Accordingly, the order of the Appellate Division should be affirmed, with costs to all parties filing briefs payable out of the estate.