FORNELL v FORNELL EQUIPMENT, INC

1. COURTS—JURISDICTION—PARTIES' CONSENT.

Subject-matter jurisdiction cannot be conferred upon a court by consent of the parties.

2. COURTS—PROBATE COURT—JURISDICTION.

Some matters lie exclusively within the jurisdiction of the probate court except where the remedies of the probate court are inadequate; the circuit courts do not always have concurrent jurisdiction with the probate courts.

3. COURTS—SPENDTHRIFTS—JURISDICTION.

No judicial power exists to make a determination that one is a spendthrift outside of the specific provisions of the probate code; the equity "clean-up" doctrine cannot be invoked to confer jurisdiction on a circuit court.

4. COURTS—SPENDTHRIFTS—JURISDICTION.

A circuit court is without subject-matter jurisdiction to determine whether a party is a spendthrift; such a determination is within the exclusive jurisdiction of the probate court since it is a matter specifically covered by the probate code and the probate court remedy is adequate.

Appeal from Wayne, Joseph G. Rashid, J. Submitted Division 1 February 3, 1972, at Detroit. (Docket No. 9590.) Decided April 24, 1972. Leave to appeal granted, 388 Mich 763.

Complaint by Bertil S. Fornell against Fornell Equipment, Inc., for an injunction to prohibit defendant from holding a shareholders' meeting.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts § 139.
[2] 20 Am Jur 2d, Courts § 104.
[3, 4] 20 Am Jur 2d, Courts § 92.

Nancy U. Fornell was added as a party plaintiff and
Richard G. Lowe and Margit F. Lowe were added
as defendants. The injunction was denied and de-
fendants counterclaimed asking that plaintiff Bertil
S. Fornell be declared a spendthrift. A consent
judgment declaring Bertil S. Fornell a spendthrift
was entered. A motion by plaintiff Bertil S. Fornell
to vacate the judgment and declare the spendthrift
guardianship terminated was denied. Plaintiff Ber-
til S. Fornell appeals. Reversed and remanded.

*Robert S. Wisok* (*Edwin P. Echlin,* of counsel),
for plaintiff Bertil S. Fornell.

*Wurzer, Higgins & Starrs* (by *Robert A. Mac-
donell*), for defendants.

Before: LESINSKI, C. J., and J. H. GILLIS and
QUINN, JJ.

LESINSKI, C. J. This suit concerns the establish-
ment of a spendthrift guardianship for plaintiff
Bertil S. Fornell by the Wayne County Circuit
Court.

Plaintiff Bertil S. Fornell initiated litigation on
May 19, 1965, in Wayne County Circuit Court, seek-
ing a temporary restraining order prohibiting de-
fendant Fornell Equipment, Inc., from holding a
shareholders' meeting. From this suit springs the
instant appeal.

Bertil and his wife, Nancy U. Fornell, owned 105
of the 250 outstanding shares of defendant corpora-
tion's stock. Bertil's sister, Margit F. Lowe, and
Margit's husband, Richard G. Lowe, were the owners
of 111 shares of stock in defendant corporation. The
remaining 34 shares of stock had been held by David

E. Fornell, the deceased father of Bertil and Margit, and were involved in a probate contest in Wayne County Probate Court at that time. Acting on plaintiff Bertil's motion, Judge Lila M. Neuenfelt granted the requested temporary restraining order, and ordered defendant corporation to appear and show cause why a preliminary injunction should not be issued.

On June 8, 1965, Judge Neuenfelt ordered Nancy U. Fornell added to the cause as a party plaintiff, and Richard G. and Margit F. Lowe added as parties defendant. Following a hearing on June 25, 1965, Judge Neuenfelt declined to issue the preliminary injunction and dissolved the temporary restraining order.

Subsequently, on November 12, 1965, defendants Fornell Equipment, Inc, Margit, and Richard filed a supplemental answer and counter-complaint, petitioning for a declaratory judgment. In this pleading for the first time defendants alleged "that plaintiff Bertil S. Fornell is a spendthrift". Among other requested relief, defendants asked that Bertil S. Fornell be declared a spendthrift and that a spendthrift guardianship be created for the benefit of Bertil, his wife Nancy, and their child.

Without any hearing on the allegation that Bertil was a spendthrift, by consent of all the parties a declaratory judgment was entered on March 2, 1966, by Judge Joseph G. Rashid, sitting in the place of absent Judge Neuenfelt. Paragraph four of the declaratory judgment reads, in part:

"It is further ordered, adjudged and decreed that plaintiff Bertil S. Fornell is a spendthrift, within the meaning of that term as it is used in the statutes of the State of Michigan relating to conserving the property of spendthrifts, and in order to preserve

the property of said plaintiff for the benefit of said plaintiff himself, his daughter, Kristin Fornell, and plaintiff Nancy U. Fornell, his wife, it is further ordered and adjudged that City National Bank of Detroit, a national banking association, be and it is hereby appointed trustee of all the assets of Bertil S. Fornell of every kind and nature presently held by him or hereinafter acquired by or for him."

Paragraph five of the declaratory judgment added the following language:

"It is further ordered and decreed that City National Bank of Detroit, a national banking association, as trustee of the assets of plaintiff, Bertil S. Fornell, is hereby vested with all the powers and duties of a statutory guardian for a spendthrift under the laws of the State of Michigan."

Under the terms of the declaratory judgment, Nancy was to receive two-thirds of the income from this spendthrift account, for the benefit of herself and Kristin, while one-third of the income was to go to Bertil.

Over two years later, Nancy moved to amend the terms of the declaratory judgment. During that time, she had been granted a divorce from Bertil. The judgment of divorce, entered by Judge Philip Pratt of the Oakland County Circuit Court on February 26, 1968, utilized the spendthrift account created by the declaratory judgment to effect the division of property and income between the parties in the divorce action, subject to the approval of Judge Rashid. In accordance with the terms of the divorce decree, Judge Rashid then approved Nancy's motion to amend the declaratory judgment on November 22, 1968. The amendment in relevant part provided that the spendthrift "trust" was to endure for the lifetime of Bertil or until July 1, 1974, which-

ever should later occur, and that the income was to be divided into thirds, with Bertil, Nancy, and their daughter, Kristin, each receiving one-third every month. This 1968 amendment to the 1966 declaratory judgment was also entered with the consent of the parties.

Then, on May 29, 1969, plaintiff Bertil moved to have vacated the declaratory judgment and amended declaratory judgment, and to have terminated the spendthrift guardianship. Thereafter, upon consent of the parties and pursuant to a prior order of Oakland County Circuit Judge Pratt entered on August 19, 1969, amending the divorce judgment, Judge Rashid provided, on October 13, 1969, that the assets and income from the spendthrift "trust" would be held by Bertil and Nancy, as tenants in common, and such assets and income should be divided between those parties on an equal basis. Following this order, Bertil and Nancy filed a stipulation on October 24, 1969, agreeing that the spendthrift "trust" esablished in the 1966 declaratory judgment and the 1968 amendments thereto, should be terminated, with Bertil and Nancy in the future to divide equally all moneys which were to be paid into the account.

After a hearing on January 20, 1970, concerning plaintiff's motion to have vacated the 1966 declaratory judgment and amendments thereto, Judge Rashid delivered his judgment on April 3, 1970. He denied plaintiff Bertil's motion to terminate the spendthrift "trust" created by the 1966 declaratory judgment as amended, vacated the order of October 13, 1969, and further provided that money paid into the "trust" from whatever source derived would be distributable in equal parts to Bertil and Nancy. Thereafter, Judge Rashid rejected plaintiff Bertil's motion for rehearing.

This Court subsequently granted Bertil leave to appeal the trial court's denial of his motion to void the 1966 declaratory judgment as amended. Bertil is the sole appellant herein.

Because of our disposition of this case, we find it necessary to reach only one of the three issues raised by plaintiff on appeal; whether the circuit court had subject-matter jurisdiction to declare Bertil a spendthrift by consent of the parties, and appoint for him a trustee with all the powers of a statutory guardian for a spendthrift under the laws of this state.

Defendants initially point out that this 1966 judgment was entered into with the consent of all the parties. As was stated in *Ortiz* v *Travelers Insurance Co,* 2 Mich App 548, 555 (1966):

"A consent judgment differs substantially from the usual litigated judgment. It is primarily the act of the parties rather than the considered judgment of the court. * * * It ordinarily cannot be set aside by the court without the consent of the parties."

Thus, defendants conclude, there is no basis on which plaintiff can appeal this judgment.

However, subject-matter jurisdiction cannot be conferred upon a court by consent of the parties. In *Kita* v *Matuszak,* 21 Mich App 421, 428 (1970), this Court stated:

"Jurisdiction of the subject matter of a judicial proceeding is an absolute requirement and obviously it either exists or does not exist. Such jurisdiction cannot be conferred by consent, by conduct or by waiver, *nor may statutory jurisdiction be conferred by consent.*" (Emphasis supplied.)

If the circuit court did not possess subject-matter jurisdiction over defendants' counter-complaint of

November 12, 1965, to have Bertil declared a spend-thrift, then, it matters not that the parties consented to the court's jurisdiction.

Defendants also contend that plaintiff is proscribed from raising the question of the circuit court's jurisdiction over the 1966 declaratory judgment because he failed to file a timely appeal therefrom. In *Millman Brothers, Inc* v *Detroit*, 2 Mich App 161, 167 (1966), this Court held that a question of subject-matter jurisdiction could "be raised at any stage of the proceedings". Thus, even if a party attempts to attack judicial proceedings collaterally, such a course of action is permissible when the error complained of is a failure of subject-matter jurisdiction over the cause of action. See *Edwards* v *Meinberg*, 334 Mich 355, 358 (1952); *Adams* v *Adams*, 304 Mich 290, 293 (1943). Indeed, a want of subject-matter jurisdiction is so serious a defect in the proceedings that a court is duty-bound to take notice of it, despite the fact that the question was not raised by the parties to the action. *In re Estate of Fraser*, 288 Mich 392, 394 (1939).

Finding no weight in defendants' arguments that this Court could not properly address the jurisdictional issue in the instant case, we turn to a discussion of the merits.

MCLA 701.19; MSA 27.3178(19), sets forth the general ambit of jurisdiction of the judges of probate. It provides, in relevant part, that:

"Each judge of probate shall have jurisdiction:

\* \* \*

"(3) To appoint guardians of minors and others in the cases prescribed by law, and of the settlement of the estates of such minors and others under guardianship."

However, this section further states that:

"The jurisdiction conferred by this section shall not be construed to deprive the circuit court in chancery in the proper county of concurrent jurisdiction as originally exercised over the same matter."

The appointment by the probate court of a guardian for a spendthrift is authorized by MCLA 703.1; MSA 27.3178(201), which provides that:

"The judge of probate in each county may, in all proper cases, appoint guardians of inhabitants or residents in his county, and also to such as reside without the state, and have any estate within his county, as follows:

* * *

"(3) Of any person, who by excessive drinking, or by gaming, idleness or debauchery of any kind, shall so spend, waste or lessen his estate as to expose himself or his family to danger or want, or suffering, or the county to charge or expense for the support of himself or his family."

Such a petition may be made by the father, mother, spouse or next of kin of any person, by the county department of social welfare, or any official thereof, or by any other person which the judge of probate deems to be a proper person to petition for the appointment of a guardian. MCLA 703.2; MSA 27.3178(202). Other sections of the probate code, MCLA 701.1, *et seq.;* MSA 27. 3178(1), *et seq.,* governing spendthrifts include MCLA 703.13–703.16; MSA 27.3178(213)–27.3178(216). No other statutory provisions exist outside of the probate code for the establishment of a guardianship for a spendthrift.

We must initially decide, in the process of determining whether the circuit court had subject-matter jurisdiction to declare Bertil a spendthrift, the effect of the proviso to MCLA 701.19; MSA 27.3178(19),

declaring that probate court jurisdiction is not intended to deprive the circuit court in chancery of concurrent jurisdiction. Defendants maintain that this clause confers concurrent jurisdiction over spendthrifts on the circuit courts of this state.

This proviso, added by 1871 PA 39, was interpreted in *Nolan* v *Garrison,* 156 Mich 397, 401 (1909), where the Michigan Supreme Court stated:

"To hold that the amendment had the effect to confer upon the court of ·chancery full concurrent jurisdiction 'of all matters relating to the settlement of the estates of such deceased persons, and of such minors and others under guardianship,' as originally exercised by the court of chancery in England, would be to revolutionize our practice as understood by the bench and bar throughout the history of our State.

"We are of the opinion that it was not the intention of the legislature by the amendment to confer upon the court of chancery the powers originally exercised by that court, but that it was the intention, as declaratory of existing law, to remove any doubt as to the power of the court to exercise its general inherent equity powers *where the remedies in the probate court were inadequate,* and that the expression, 'originally exercised over the same matters,' should be construed as referring to the exercise of the inherent equitable powers of the court as theretofore exercised in Michigan." (Emphasis supplied.)

In *Nolan,* the Supreme Court affirmed the circuit court's dismissal for want of jurisdiction of a creditor's bill filed against the estate of a mentally incompetent person.

There is ample authority for the proposition that the jurisdiction of the circuit courts and probate courts of this state are not concurrent in all matters. The Michigan Supreme Court, in *Ashbaugh* v *Sinclair,* 300 Mich 673, 677 (1942), in vacating a circuit

court decree imposing an equitable lien on the wards' property and ordering a sale thereof, ruled that "[t]he circuit court in chancery cannot act as a substitute for the probate court". In *Kogan* v *Stone*, 376 Mich 21 (1965), an equally divided Michigan Supreme Court affirmed the judgment of the circuit court, which dismissed plaintiff's suit for want of jurisdiction. Plaintiff had brought an action against defendants, her relatives, seeking contribution for payments she had made to support her mother. Despite the existence of a penal statute setting forth penalties for failure to support, the jurisdiction of which inheres in the circuit court, the four justices voting for affirmance declared that an action for contribution was wholly statutory, and any such proceeding must be brought exclusively in probate court.

A panel of this Court, in *In re Mark T*, 8 Mich App 122 (1967), held that the circuit court had the power, in a *habeas corpus* action, to determine a custody dispute involving an illegitimate child, but noted, at the same time, that the proceeding was not one for adoption, which is governed by the probate code. The Court pointed out at p 132, that the adoption statute, MCLA 710.1; MSA 27.3178(541), "does not purport to provide a procedure for resolving child custody disputes". Further, in *Olmstead* v *Olmstead*, 340 Mich 156, 164 (1954), which involved a suit for separate maintenance, the Supreme Court declined to pass on the validity of a will "because the allowance or disallowance of the will is with the probate court as a matter of original jurisdiction".

A common strain runs through all of these decisions. There is either an implicit or explicit recognition of the fact that some matters properly lie within the exclusive jurisdiction of the probate court except where the remedies of the probate court are, in a rare case, inadequate.

Thus, we confront the ultimate question of whether the creation of a spendthrift guardianship is exclusively within the province of the probate court.

A recognition of the imposing power vested in the courts by spendthrift statutes can be found in early 19th century judicial commentary. In *Smith* v *Spooner,* 20 Mass 229–230 (1926), the Court stated that spendthrift statutes "should be construed strictly, for though founded in policy and a just regard to the public welfare, they are in derogation of private rights". A similar exposition appears in the case of *City of Norton* v *Leonard,* 29 Mass 152, 160 (1831), where the Court said:

"It is manifest from this abstract of the statute, that it is founded in considerations of great public policy. The power given by the statute, to institute these proceedings, itself a most extensive and extraordinary one, and one which may in its consequence, take away the whole power of any person over the whole of his real and personal property, and place him in a state of pupilage, is vested exclusively in the selectmen for the time being."

Likewise, in *Hamilton* v *Court of Probate of North Providence,* 9 RI 204, 207 (1869), the court emphasized that "[t]he power of putting a person of full age under guardianship is a great power, and to be exercised with great caution".

These expressions of concern about the extreme care with which this broad authority must be utilized has continued down to the present day. Thus, the Massachusetts Supreme Court, in *Mitchell* v *Mitchell,* 312 Mass 154, 162; 43 NE2d 783, 787 (1942), striking down a decree appointing a guardian for a spendthrift, where the alleged spendthrift's attorney had filed the petition, ruled that:

"Where, as here, the Legislature has prescribed the method of procedure, we are of the opinion that it is a prerequisite to the exercise of the jurisdiction of the court that that method be followed."

There is a virtual dearth of authority in the cases of this state on the employment of the spendthrift provisions.* However, numerous interpretations by Michigan courts of statutes providing for the appointment of guardians for those who are mentally incompetent to handle their estates evidence a like concern that the provisions should be employed with great care. MCLA 703.1(4); MSA 27.3178(201)[4]. In the case of *North* v *Joslin,* 59 Mich 624, 646 (1886), where the Michigan Supreme Court held the guardianship proceedings void for want of notice, it was stated that:

"The probate court derives its jurisdiction to appoint guardians for insane and incompetent persons entirely from the statute (How Stat §§ 6314, 6315), and in order to obtain jurisdiction in such cases the provisions of the statute must be strictly pursued."

*In re Bassett,* 68 Mich 348, 354 (1888), invalidated the order of a probate judge appointing a special guardian because there had been no adjudication that the ward was incapable of taking care of himself or his property. The Court noted that:

"The proceedings are special, and in their nature summary, as well as being purely statutory, and, where they involve the citizen in the deprivation of both liberty and property, they must be strictly complied with."

A further indication of the extreme care that has been exhibited by Michigan courts with regard to

---

* The parties in this action have failed to cite any Michigan authority on the spendthrift provisions. Our search has revealed one case where a party had been adjudicated a spendthrift. See *Norton* v *Ohrns,* 67 Mich 612 (1887).

these types of statutes was given in *Partello* v *Holton,* 79 Mich 372, 378 (1890), where, commenting on the application of the statutes regarding mental incompetents and spendthrifts, the Court pointed out:

"The fact that a man is unable to provide a comfortable and suitable maintenance for his family, even when coupled with the fact that he makes foolish bargains and squanders all he earns, is not made by either statute a reason why he should have a guardian appointed over him. If it were, a goodly number of people would be under guardianship."

See, also, *In re Guardianship of Storick,* 64 Mich 685 (1887).

In light of this body of precedent, we hold that no judicial power exists to make a determination that one is a spendthrift, outside of the specific provisions of the probate code. The power, to the extent that it exists, exists solely on the basis of the statutory grant of authority, and any deviation from the procedure mandated by the statute cannot be tolerated.

Defendants further argue, however, that plaintiff Bertil, by initially instituting an equitable action in 1965, gave jurisdiction to the circuit court to grant complete relief. They cite *Frank* v *Coyle,* 310 Mich 14, 17 (1944), for the proposition that " '[a] court of equity, having jurisdiction upon any well-settled ground of equity, will retain jurisdiction to grant complete relief' ". We reject this contention that the equity "clean-up" doctrine is justification in this case for allowing the circuit court to exercise subject-matter jurisdiction over the question of whether Bertil is a spendthrift. To so hold would virtually subject any party in an equitable action to the risk of being adjudicated a spendthrift, once the jurisdiction of the circuit court had been invoked. We are cognizant of the facts that Bertil and his sister

Margit were vying for control of the defendant corporation at the inception of this suit, that defendants were concerned that Bertil and Nancy were attempting to effect a stock transfer of their shares in defendant corporation in violation of stock transfer restrictions in the corporate by-laws, and that the rights and liabilities of Bertil and Nancy in certain patent royalty agreements and retirement plans were in dispute. The record futher indicates disagreements over the probating of the estates of David E. Fornell, the father of Bertil and Margit, and Gertrude K. Fornell, their mother.

Whether Bertil was, in fact, a spendthrift whose property should have been placed under the control of a guardian, was a matter properly to be determined in a probate court, exclusive of these other controversies. To allow the threat of a guardianship proceeding to be employed by parties to a civil proceeding as a bargaining factor in the process of settlement is to distort the purpose of the guardianship provisions. As was stated by one noted legal scholar:

"The proceeding for appointment of a guardian or conservator, by reason of personal incapacity of the ward, involves an interference with the owner's control of his assets that makes it comparable to a debtor's enforced liquidation. More important, however, is the declared purpose of such a proceeding, the protection of the ward against his own weakness or improvidence. A remedy developed for such a purpose cannot be considered an appropriate subject of private bargaining, as can other types of civil litigation. Where a threat of guardianship proceedings has been used as a form of pressure, there are apt also to appear those elements of personal inequality that characterize 'undue influence.' But without direct appeal to the doctrine of undue influence, it is possible to say as several courts have

done that the use of this type of remedy for the securing of private advantage is a misuse and diversion from its intended purpose." J. Dawson, *Duress Through Civil Litigation, II,* 45 Mich L Rev 679, 710–711 (1947).

By permitting a circuit court, in the exercise of its equity jurisdiction, to determine whether a party is a spendthrift, we would only be accentuating the opportunity for "abuse of the machinery of the law for the purpose of securing an unconscionable advantage". *Foote* v *DePoy,* 126 Iowa 366, 373; 102 NW 112, 115 (1905).

We do not mean to imply that such an abuse occurred here. Rather, our result is intended to prevent even an opportunity for abuse of the spendthrift provisions.

The circuit court was without subject-matter jurisdiction to hear this petition asking that plaintiff Bertil be declared a spendthrift. Accordingly, the 1966 declaratory judgment, as amended, and entered into by consent of the parties, is void, and the guardianship is terminated. *Fox* v *Board of Regents of the University of Michigan,* 375 Mich 238 (1965).

The judgment of the trial court is reversed, and this cause is remanded for final disposition not inconsistent with this opinion. We retain no jurisdiction.

Reversed and remanded. Costs to plaintiff.
All concurred.