*In re* EDGAR ESTATE

ROY v COMERICA BANK—DETROIT

Docket No. 75155. Argued February 7, 1986 (Calendar No. 8). Decided
July 11, 1986.

Lansing J. Roy, trustee in bankruptcy of the estate of William H.
Edgar, brought an action in the Wayne Probate Court against
Comerica Bank-Detroit, trustee under the will of Clinton Good-
loe Edgar, challenging the validity of a spendthrift trust pro-
vided under the will which, upon termination, could result in
William Edgar, current recipient of one-half of the income of
the trust, receiving one-half of its principal. The trustee in
bankruptcy argued that under Michigan law a spendthrift trust
which purports to give the same beneficiary an interest in both
the income and the principal of a trust is invalid. The court,
Joseph J. Pernick, J., granted summary judgment for the
trustee under the will, sustaining the validity of the spendthrift
provision. The Court of Appeals, Cynar, P.J., and Gribbs and
Knoblock, JJ., reversed (Docket No. 63973). The respondent
appeals.

In a unanimous opinion by Chief Justice Williams, the
Supreme Court *held:*

A spendthrift trust which gives the same beneficiary an
interest in both the income and the principal of the trust is
valid; a settlor may establish a trust which restricts a benefici-
ary's ability to alienate both income and principal.

1. The primary goal in construing a will is to effectuate, to an
extent consistent with law, the intent of the testator. There are
no public policy reasons to depart from that principle where, as
in this case, a spendthrift trust established under a will pro-
tects both the income and the principal for the same benefi-
ciary. In addition, such a position is in accordance with sound
common-law principles and is supported by a majority of au-
thorities that have considered the issue.

2. Previous case law holding contra was not in accord with

References

Am Jur 2d, Trusts §§ 147 *et seq.*

Validity and construction of beneficiary's arrangement for payment
to another, as they become due, of sums under spendthrift trust.
83 ALR3d 1142.

the rule of furthering the desires of the testator, had no rational policy basis, and was at odds with the law in the majority of the states. Because the basis of the earlier rule has disappeared, the declination of the Court to be bound by it is not an arbitrary departure from stare decisis. The rule of stare decisis was never intended to perpetuate error or to prevent consideration of change where an undeniably better rule is available.

Reversed.

137 Mich App 419; 357 NW2d 867 (1984) reversed.

TRUSTS — SPENDTHRIFT TRUSTS — VALIDITY.

A spendthrift trust which gives the same beneficiary an interest in both the income and the principal of the trust is valid; a settlor may establish a trust which restricts a beneficiary's ability to alienate both income and principal.

*Frank X. Fortescue* for the petitioner.

*Donovan, Hammond, Ziegelman, Roach & Sotiroff, P.C.* (by *Frank W. Donovan, Thomas E. Reiss,* and *Thomas G. Good*); (*Butzel, Long, Gust, Klein & Van Zile, P.C.,* by *Donald B. Miller,* of counsel), for the respondent.

Amici Curiae:

*Warner, Norcross & Judd* (by *James H. Breay* and *John V. Byl*) for Michigan Bankers Association.

*Harold A. Draper* for Probate and Trust Law Section, State Bar of Michigan.

*Mark C. Meyer, Robert O. Baer, Gary L. Kohut, Gayle A. Spillard,* and *Michael A. Stevenson* for UAW-GM Legal Services Plan, UAW-Ford Legal Services Plan, and UAW Legal Services Plan.

WILLIAMS, C.J. The issue in this case is whether a spendthrift trust which purports to give the *same* beneficiary an interest in both the income and the principal is valid in Michigan.

More particularly, the issue appears to be whether the language in *Rose v Southern Michigan Nat'l Bank,* 255 Mich 275, 281; 238 NW 284 (1931), "The gift to the donee must be only of the income" (followed in *In re Ford Estate,* 331 Mich 220, 229; 49 NW2d 154 [1951]), prevails or whether Michigan should follow the rule of the Restatement Trusts, 2d, § 153(1), p 318, comment b:

> Where a beneficiary of a trust is entitled to receive the principal at some future time, a restraint on the voluntary or involuntary alienation of his interest is valid, *whether or not he is entitled to receive the income in the meantime.* [Emphasis added.]

We hold that a spendthrift trust giving the same beneficiary an interest in both the income and the principal is valid. We reverse the decision of the Court of Appeals.

### I. FACTS

In a will dated June 7, 1932, Clinton Goodloe Edgar set up a trust, the income from which was to be distributed to his wife and children. Upon the death of his wife, one-half of the trust income was to be given to his daughter, Katharine Edgar Byron, or her issue, and one-half to his son, James Edgar, or his issue. When the trust terminates upon the death of the survivor of Clinton Goodloe Edgar's grandchildren born before his death, the principal is to be divided into two equal shares, one of which is to go to the issue of Katharine and the other to the issue of James. According to appellant, both the daughter and the son are deceased, but two grandchildren are still alive and are presently the measuring lives of the trust. When the trust terminates, the principal is to be

divided into two equal shares, one of which is to go to the issue of Katharine, and the other to the issue of James. James' only child, William Edgar, born after the death of his grandfather, currently receives one-half of the income generated by the trust and, if the trust terminates before his death, will receive one-half of the principal.

In paragraph 16 of his will, the testator purported to subject all trust property to a spendthrift provision.[1] The validity of this provision became important when grandson William Edgar filed a voluntary bankruptcy petition in Florida on May 5, 1978.

Under the then-applicable bankruptcy act, property which a bankrupt could have transferred before the declaration of bankruptcy became vested in the trustee of the estate of the bankrupt. 11 USC 110(a).[2] Property which cannot be trans-

---

[1] No person entitled as beneficiary hereunder—either to the body or corpus of said property upon the termination of said trust, or to the income therefrom during the continuance thereof—shall take or have any title to or interest in such body or corpus or income until the same shall be actually received in possession by such a person. No disposition, charge or encumbrance by way of anticipation of such trust property or estate, or the income therefrom, or any part thereof, by any person who may be designated as beneficiary hereunder, shall be of any validity or legal effect, or be in anywise regarded by said Trustees, nor shall the interest of any beneficiary be in any way liable for any claim of any creditor or of any other person to whom such beneficiary may be in any way obligated.

[2] The relevant portion of 11 USC 110(a) read:

The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located . . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been

ferred under state law is considered nontransferrable under the act. *Eaton v Boston Safe Deposit & Trust Co,* 240 US 427; 36 S Ct 391; 60 L Ed 723 (1916). Therefore, if the spendthrift trust is valid under Michigan law, the interest of the bankrupt in the trust is not subject to attachment by the bankruptcy trustee.

The bankruptcy case proceeded from the initial filing in bankruptcy court in Florida to the Eleventh Circuit, with all courts involved assuming that the spendthrift trust was valid under Michigan law. *In re Edgar,* 11 BR 853 (ND Fla, 1981), rev'd 728 F2d 1371 (CA 11, 1984). Before a decision had been reached by the bankruptcy court on remand, the trustee in bankruptcy brought a suit in Michigan, challenging directly the validity of the spendthrift trust. The suit initially was filed in the United States District Court and dismissed for lack of jurisdiction. On December 29, 1980, the action then was commenced in the Wayne Probate Court. That court sustained the validity of the spendthrift provision of the trust and granted summary judgment in favor of Comerica, trustee under the will, on March 22, 1982. The Court of Appeals reversed, finding the provision invalid under prior Michigan cases, namely *Rose v Southern Michigan Nat'l Bank, supra,* and *In re Ford Estate, supra. In re Edgar Estate,* 137 Mich App 419; 357 NW2d 867 (1984). We granted leave to appeal. 422 Mich 937 (1985).

## II. PERTINENT MICHIGAN CASE LAW

The concept of a spendthrift trust has been long recognized by Michigan courts. In *In re Peck Estates,* 320 Mich 692, 699; 32 NW2d 14 (1948),

levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered . . . .

this Court acknowledged that a trust which *restricted* the ability of the beneficiaries

> to assign, convey, pledge, hypothecate or anticipate the payment of any sum . . . which may at any time be or become due or payable by way of income or principal, under the terms of this will

was a spendthrift trust. See also *Roberts v Michigan Trust Co*, 273 Mich 91, 108; 262 NW 744 (1935).

In *Rose v Southern Michigan Nat'l Bank, supra*, 281, this Court quoted a definition from a case in Missouri.

> "In order to create a spendthrift trust certain prerequisites must be observed, to wit: first, the gift to the donee must be only of the income. He must take no estate whatever, have nothing to alienate, have no right to possession, have no beneficial interest in the land, but only a qualified right to support, and an equitable interest only in the income; second, the legal title must be vested in a trustee; third, the trust must be an active one." [Quoting *Kessner v Phillips*, 189 Mo 515, 524; 88 SW 66 (1905).][3]

---

[3] In later cases involving spendthrift trusts, this language has not been relied upon in Missouri. In *Gordon v Tate*, 314 Mo 508, 514; 284 SW 497 (1926), the Missouri Supreme Court upheld the validity of a trust in which both the income and the principal were subject to a spendthrift provision. The court concluded:

> That it was the intent of the donor that the gift to defendant, *both income and corpus*, should not, during the trust period, be either alienable or subject to any debts or liens created by the beneficiary is beyond question. . . . By the great weight of American authority, with which our own decisions are in line, the donor of an equitable life estate may impose such restrictions with respect thereto that the interest of the donee can neither be alienated nor subjected to the claims of his creditors. [Emphasis added.]

As to the applicability of the *Kessner* language, the Court noted,

This language is dicta because in reaching its decision the *Rose* Court relies on the fact that a spendthrift trust cannot be terminated by the beneficiaries. The agreement before the Court which terminated the trust was held invalid because a beneficiary had received only an *inalienable* gift of income under the will.

In a subsequent case, this Court again considered a settlement agreement which purported to resolve a dispute involving the interpretation of a will. *In re Ford Estate, supra.* In that case, the testator directed that "on the death of my wife, [ ] or should [she] predecease me," trusts were to be set up for his sons. The income from the trusts was to be paid to the sons and the principal distributed to them in thirds when they reached the ages of thirty, thirty-five, and forty. The will also provided that

> 18. Should either or both of my sons at any time or times develop spendthrift or disorderly habits, my trustees are authorized and empowered to withhold from such son any part of the income and any part of the distributable corpus provided herein directed to be paid to any beneficiary.
>
> 19. The trustees shall not be permitted nor authorized to recognize any assignment of interest or principal herein directed to be paid to any beneficiary.

The beneficiaries agreed among themselves that the testator did not intend that the trust distribution was to be suspended during the lifetime of the testator's widow. A challenge was brought to this

"Much that is said as to the prerequisites of a spendthrift trust must be regarded as mere dicta." *Gordon,* 314 Mo 515. See also *McNeal v Bonnel,* 412 SW2d 167, 170 (Mo, 1967), in which the Missouri Supreme Court defined spendthrift trust as a trust of "either income *or principal* . . . in which . . . 'a valid restraint on the voluntary and involuntary transfer of the beneficiary is imposed.' " (Emphasis added, citation omitted.)

agreement, based in part upon an argument that the will set up spendthrift trusts which could not be terminated by the beneficiaries. This Court in reviewing the agreement held that it was valid and that the trusts created were not spendthrift trusts. This Court appears to have reached the latter conclusion for two reasons: 1) the trusts gave the beneficiaries an interest in both income and principal, thus violating the *Kessner* rule as stated in *Rose,* and 2) paragraphs 18 and 19, quoted above, did not create a spendthrift trust. Because of this partial reliance on the *Kessner* rule, we are unable to conclude that the *Ford* Court's use of the quote from *Kessner* is solely dicta.

The Court of Appeals later interpreted the potentially broad scope of the *Ford* definition narrowly in *Preminger v Union Bank & Trust,* 54 Mich App 361, 367; 220 NW2d 795 (1974). In that case, there was an attempt by the remaindermen under the trust to transfer their interest to one of the income beneficiaries. Both the income and the principal were protected by a spendthrift provision, but the interests were given to different beneficiaries. The Court determined that while the transfer was invalid because it would give an interest in both principal and income to the same beneficiary, a settlor could validly restrict the alienation of the *principal* of the trust. Thus, after *Preminger,* Michigan law was interpreted as allowing

> a settlor [to] validly restrict the voluntary or involuntary alienation of principal during the life interest of the income beneficiary, provided that the right to principal does not vest in the income beneficiary. [54 Mich App 367.]

Most recently, in *Fornell v Fornell Equipment,*

*Inc,* 390 Mich 540, 548; 213 NW2d 172 (1973),[4] this Court stated that a spendthrift trust is a trust

> created to provide a fund for the maintenance of the beneficiary and at the same time to secure it against his improvidence or incapacity. In a narrower and more technical sense, a spendthrift trust is one that restrains either the voluntary or involuntary alienation by a beneficiary of his interest in the trust, or which, in other words, bars such interest from seizure in satisfaction of his debts. [Quoting 54 Am Jur, Trusts, § 148, p 123.]

However, in that case this Court distinguished a spendthrift trust from a spendthrift guardianship, but did not appear to decide whether the instrument at issue was one or the other.[5] As a consequence, the language quoted was dicta. Further, this Court did not consider the earlier cases which suggested that spendthrift trusts might only be valid with respect to income. For these reasons we do not find the *Fornell* case dispositive of the issue before us today.

### III. ARGUMENTS OF PARTIES

#### A. TRUSTEE IN BANKRUPTCY

The principal argument of the trustee in bankruptcy is: "*Stare Decisis* requires that the Court of Appeals decision in this case be affirmed." He contends that the *Kessner* quotation in *Rose* "enunciated the prerequisites for a valid Michigan Spendthrift Trust" as follows:

> In order to create a spendthrift trust certain

---

[4] The *Rose, Ford, Preminger,* and *Fornell* cases appear to be the only Michigan cases closely involving the issue before us.

[5] We note that the Court of Appeals in both *Edgar, supra,* 426, and *Fornell,* 39 Mich App 709, 710, 719; 198 NW2d 694 (1972), assumed the agreement considered in *Fornell* was a spendthrift guardianship.

> prerequisites must be observed, to-wit: First, the
> gift to the donee must be only of the income. He
> must take no estate whatever, have nothing to
> alienate, have no right to possession, have no
> beneficial interest in the land, but only a qualified
> right to support and an equitable interest only in
> the income . . . .

He then contends that *Fornell* distinguished between a spendthrift trust and a spendthrift guardianship and in no way conflicts with the *Kessner* definition of a spendthrift trust.

The *Kessner* language in *Rose* was followed in *Ford.* Further, the trustee in bankruptcy contends "[t]he Court of Appeals has maintained the continuity of this Court's rule in *Rose* and *Ford* in at least three cases, in addition to this one." The three cases are *Preminger, Hurley v Hurley,* 107 Mich App 249; 309 NW2d 225 (1981), and *Coverston v Kellogg,* 136 Mich App 504; 357 NW2d 705 (1984).[6] It was further argued that the fact that the Missouri courts no longer follow the *Kessner* rule should make no difference to this Court.

Because "[t]he facts in *Ford* are most nearly identical to the facts in the instant case," and "[this] Court held that the trust created in the Ford Will was not a spendthrift trust," the bankruptcy trustee argues that the decision in *Ford* should determine the result here.

Finally, the trustee in bankruptcy makes two further observations. First, the *Rose-Ford* decisions are consistent with the law in other jurisdictions. Second, the policy behind the *Rose-Ford* decisions presents a reasonable compromise between the

---

[6] *Hurley* held spendthrift provisions were ineffective to prevent alienation as to the enforcement of child support orders. *Coverston* held the same with respect to the collection of alimony payments. Neither of these cases is directly on point as to whether or not there can be a spendthrift trust outside of the specific subject matter they deal with.

interests of the spendthrift trust settlor and society's reluctance to interfere with normal economic exchange.

### B. TRUSTEE UNDER THE WILL

Comerica, the trustee under the will, argues that the decision of the Court of Appeals in this case should be reversed and spendthrift trusts which give income and principal to the same beneficiary should be allowed. Comerica's first argument is:

> The Supreme Court in *Rose* did not decide that a spendthrift trust is invalid where a beneficiary has an interest in both the trust's income and principal. That decision discussed only restrictions upon alienability of a beneficiary's interest in income. It did not expressly discuss restrictions upon alienability of a beneficiary's interest in principal; yet it upheld a spendthrift trust where one of the three beneficiaries (the daughter Edith) did have interests in both income and principal if she survived her brother.

Comerica went on to say that the *Kessner* case did not even involve a spendthrift trust and that it was subsequently not followed in the Missouri courts, citing *Graham v More,* 189 SW 1186 (Mo, 1916), which upheld a spendthrift trust where the beneficiary had an interest in both the income and principal, and also *Gordon v Tate,* 314 Mo 508; 284 SW 497 (1926), which said among other things: "Much that is said [in *Kessner*] as to the prerequisites of a spendthrift trust must be regarded as mere dicta." *Id.,* 515.

Comerica's second argument is that the *Rose-Ford* rule is contrary to the prevailing weight of decisional authority in other jurisdictions, citing 2 Scott, Trusts (3d ed), § 153, pp 1167-1171; Restate-

ment Trusts, 2d, § 153(1), p 318; 76 Am Jur 2d, Trusts, § 152, p 393, all holding that a spendthrift trust which gives the same beneficiary a right to income and principal can be valid.

Third, in urging that the trust be upheld, Comerica argues that this Court, in *Fornell,* adopted a definition of a spendthrift trust different from that used in *Rose* and *Ford.* Under this analysis, our earlier, more restrictive, statements were impliedly abandoned. As previously indicated, we consider the definition in *Fornell* dicta and this argument not very persuasive.

Fourth, Comerica also asks us to recognize that there is no public policy basis for refusing to allow the same beneficiary to have an interest in both the income and the principal of a spendthrift trust. The preference for disposing of the property as the testator desired should be of primary importance. Enforcing that policy in these cases will not hurt creditors because spendthrift trusts are a matter of public record, and such records provide a means by which creditors can protect themselves. The advantage of enforcing this type of trust is that a settlor may protect family money from young, financially inexperienced heirs.

Fifth, and finally, Comerica argues that the principle of stare decisis does not require this Court to accept the *Rose-Ford* rule. Comerica states:

> Part of the consideration for determining whether there has been a sufficient change in society to justify changing a previous rule of law is the examination of current legal authorities to determine if there is a major shift away from a prior judicial rule. *Womack v Buchhorn,* 384 Mich 718, 720-723; 187 NW2d 218 (1971). Here, as noted, there has been a shift in which the majority of jurisdictions allow a beneficiary to have an inter-

est in both income and corpus of a spendthrift trust. This shift is shown not only in the major jurisdictions, and in the majority rule, but also in the change shown between Restatement, Trusts, § 153, and Restatement Trusts, 2d, § 153, allowing for inalienability of principal. 76 Am Jur 2d, Trusts, § 157, p 397.

### C. ARGUMENTS MADE BY AMICI CURIAE

Three organizations have filed amicus curiae briefs, urging this Court to reverse the decision of the Court of Appeals. These organizations are the Probate & Trust Law Section of the State Bar, the Michigan Bankers Association, and the UAW Legal Services Plan.

All these briefs argue that the decision of the Court of Appeals is against the weight of the authority in other jurisdictions and that the specific language relied upon by the Court of Appeals has been disavowed by the Missouri courts. They urge this Court to find that spendthrift trusts such as the one considered here are not against public policy, and also note that a decision affirming the Court of Appeals in this case would defeat the intentions of settlors in many spendthrift trusts already in existence.

### D. SUMMARY

We have reviewed the arguments of counsel. The trustee in bankruptcy appears to rely principally on stare decisis and the rule of *Kessner* appearing in *Rose* and *Ford*. The trustee under the will appears to rely on three points. First, the *Rose-Ford* rule is contrary to the prevailing weight of authority as expressed in 2 Scott, Trusts (3d ed), § 153, pp 1170-1171, and Restatement Trusts, 2d, § 153. The three amici curiae agree. Second, the

rule is that the preference of the testator should prevail. The three amici curiae agree. Third, there is no violation of public policy because there is no greater restriction on alienation in a spendthrift trust where the income and principal are reserved to the same person than where they are reserved to two different persons, as the law now clearly allows.

The trustee under the will contends the *Kessner* rule in *Rose* is dicta, but it is clearly one of two bases for the decision in *Ford.* On the other hand, the trustee in bankruptcy contends that the law in many states limits the alienation of principal in specific areas such as alimony and child support, but this clearly does not disprove the general rule stated in Scott and the Restatement. As a consequence, the main points made by both parties stand.

### IV. ANALYSIS

Neither the courts nor the Legislature in Michigan have questioned the wisdom of allowing spendthrift trusts generally. Under prior law such trusts are valid with respect to both income and principal so long as the same beneficiary is not given an interest in both. Therefore, assuming that a trust in which interests in income and principal are given to different beneficiaries is valid, we are left to decide whether to treat differently a spendthrift trust in which an interest in both is given to a single person.

We are then confronted with a choice between mechanically applying the *Rose-Ford* language or carefully considering the underlying implications. We find that the rule stated in *Ford* is not in accord with the important rule of furthering the desires of the testator, has no rational policy basis,

and is at odds with the law in the majority of states. Furthermore, in declining to be bound by our earlier language in *Rose* and *Ford,* we are not arbitrarily departing from stare decisis because the basis of the *Ford* rule has disappeared and, furthermore, overruling the rule puts us in line with the majority of states.

### A. TESTATOR'S INTENT

The primary goal of the Court in construing a will is to effectuate, to the extent consistent with the law, the intent of the testator. As said in *In re Churchill Estate,* 230 Mich 148, 155; 203 NW 118 (1925), "In the construction of wills the cardinal canon, the guiding polar star, is that the intent of the testator must govern . . . ." See also *Hay v Hay,* 317 Mich 370, 397; 26 NW2d 908 (1947); *Dodge v Detroit Trust Co,* 300 Mich 575, 598; 2 NW2d 509 (1942). We see no reason to depart from this widely accepted principle in this case, and therefore we uphold the spendthrift provisions as written, reserving both income and principal in the same person.

### B. PUBLIC POLICY

There is no public policy reason for not enforcing a spendthrift trust which protects both the income and the principal for the same beneficiary. We are not persuaded by the bankruptcy trustee's argument that this restriction represents a reasonable compromise between competing interests. This restriction was stated without careful analysis of the problem, and it does not reflect a conscious attempt by this Court to balance conflicting interests. At present, both the income and the principal of the trust can be protected at least where an interest in both is not given to the same

beneficiary. Our decision today does not expand the ability of a settlor to restrict access of creditors to trust funds, but merely enables him to give one person a right to both the income and the principal. We agree with the trustee under the will that there is no public policy reason for invalidating this trust.

## C. OTHER AUTHORITIES

The position we adopt today is supported by the majority of authorities which have considered the issue. Restatement Trusts, 2d, § 153(1), p 318, comment b states:

> Where a beneficiary of a trust is entitled to receive the principal at some future time, a restraint on the voluntary or involuntary alienation of his interest is valid, *whether or not he is entitled to receive the income in the meantime.* [Emphasis added.]

See also *In re Vought Estate,* 25 NY2d 163, 196; 250 NE2d 343 (1969); *Clark v Clark,* 411 Pa 251, 254-255; 191 A2d 417 (1963); *Medwedeff v Fisher,* 179 Md 192, 196-198; 17 A2d 141 (1941); *Erickson v Erickson,* 197 Minn 71; 266 NW 161 (1936); Reporter's Notes to Restatement Trusts, 2d, Appendix, § 153; Plumb, *The recommendations of the commission on the bankruptcy laws—Exempt and immune property,* 61 Va L R 1, 84 (1975) (noting that this position appears to reflect the weight of authority on the subject).

Our research does not reveal that any other state has adopted the distinction drawn in the *Rose* and *Ford* cases. We also note that even in Missouri, the *Kessner* language we consider today has not been followed. See n 3. This overwhelming consensus further supports our conviction that the decision we reach today is the right one.

*D. STARE DECISIS*

In *Parker v Port Huron Hospital,* 361 Mich 1, 10; 105 NW2d 1 (1960), in which the Court over-ruled the immunity of charitable hospitals, we stated:

> The rule of *stare decisis* establishes uniformity, certainty, and stability in the law, but it was never intended to perpetuate error or to prevent the consideration of rules of law to be applied to the ever-changing business, economic, and political life of a community. Only in the rare case when it is clearly apparent that an error has been made, or changing conditions result in injustice by the application of an outmoded rule, should we deviate from the following established rule.

In *Womack v Buchhorn, supra,* 720, we again considered whether to apply the rule of stare decisis and thereby deny recovery for a negligently inflicted prenatal injury. In that case, we found that our earlier reliance on cases from other juris-dictions and the state of medical science had been undermined by a dramatic shift in the weight of the law and by recent medical advances. There-fore, we were persuaded to change our previous rule. See also *Wilson v Doehler-Jarvis,* 358 Mich 510, 514; 100 NW2d 226 (1960) ("this Court must [not] perpetuate error simply because it may have reached a wrong result in one of its earlier deci-sions"). But see *Abendschein v Farrell,* 382 Mich 510, 516; 170 NW2d 137 (1969) (this Court in following the principle of stare decisis said it will do so except when "persuasion leads us to [an] abiding conviction that some undeniably better rule is available for proper supersession").

Conceding that the *Rose-Ford* rule is not dicta,

per arguendo, there are three strong reasons not to follow the *Rose-Ford* rule here. First, the *Kessner* rule, quoted by *Rose,* has been disavowed in Missouri, its state of origin. See n 3. Second, the Restatement Trusts, § 153, which was similar to the *Rose-Ford* rule was changed in the subsequent Restatement Trusts, 2d, § 153, to allow the inalienability of both income and principal in the same person. Third, as noted above, the majority of jurisdictions presently allow inalienability of both income and principal in the same person. As a consequence, recognition of a spendthrift trust with income and principal reserved for the same beneficiary would be in accordance with sound common-law principles. *Womack, supra.*

### V. CONCLUSION

We agree with the authorities cited that there is no reason to maintain a distinction between a spendthrift trust in which the income and principal are given to two people and one in which they are given to the same person. Such a distinction cannot be supported legally or policy-wise and has not been relied on in practice. The language of the trust is explicit and should not be defeated by an outdated rule which furthers no public policy interest and is contrary to the general rule in the United States. To the extent this opinion is inconsistent with *Ford* and *Rose,* they are overruled.

.For the foregoing reasons, we reverse the decision of the Court of Appeals. We hold that a settlor may set up a spendthrift trust which restricts a beneficiary's ability to alienate both income and principal.

LEVIN, BRICKLEY, CAVANAGH, BOYLE, RILEY, and ARCHER, JJ., concurred with WILLIAMS, C.J.